Córdova Arone, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
La Autoridad de Acueductos y Alcantarillados (la Autoridad), solicita la revocación de una sentencia dictada el 14 de octubre de 1998 por el Tribunal de Primera Instancia, Sala Superior de Aguadilla. Mediante la misma se declaró con lugar una demanda sobre daños y perjuicios presentada por el Sr. Wilson Méndez Colón, su esposa, la Sra. Migdalia Hernández Galarza y la sociedad de gananciales compuesta por ellos, por sí y en representación de su hija Wildeyra Méndez Hernández en contra del Comité Gerícola Regional de Mayagüez, Inc. (el Comité) y su compañía aseguradora, General Accident Insurance Company Puerto Rico Limited (General Accident).
El Tribunal de Primera Instancia condenó a la Autoridad (tercera demandada en el pleito), a su compañía aseguradora American International Insurance Company of Puerto Rico (American), al comité y a General Accident a pagar en forma solidaria ciertas sumas de dinero a la menor accidentada y a sus padres como indemnización por los daños y peijuicios sufridos. Además, el foro apelado determinó que la Autoridad, American, el Comité y General Accident fueron temerarios, por lo que les impuso una condena en concepto de honorarios de abogado.
Por los fundamentos que pasamos a exponer más adelante, se modifica la sentencia apelada a los fines de eliminar la condena de honorarios de abogado y devolver el caso al Tribunal de Primera Instancia para que adjudique la demanda contra tercero presentada por el Comité y General Accident en contra de la Autoridad y American, y asigne los porcientos de negligencia incurridos por cada una; así modificada se confirma. Veamos los hechos pertinentes.
I
El 28 de septiembre de 1996, la menor Wildeyra Méndez Hernández, que para esa fecha tenía ocho (8) años, caminaba con una amiga por una acera del residencial público José A. Aponte de Aguadilla. Perdió el *999 equilibrio y cayó en un hoyo que había al lado de la base de concreto en la cual se encontraban tres cajas de contadores de agua pertenecientes a la Autoridad. Este hoyo es producto de un desnivel entre el terreno que bordea la referida base de concreto y ésta.
La menor accidentada sufrió la fractura de la tibia de su pierna derecha. Según los informes médicos estipulados por las partes, la fractura fue una patológica, a través de un área previamente debilitada por un fibroma no osificante. La niña estuvo un mes en cama, tres meses con un yeso en su pierna y seis meses sin poder asistir a la escuela.
El 14 de marzo de 1997, los apelados presentaron una demanda sobre daños y perjuicios en contra del Comité y de General Accident. El Comité operaba y administraba el Residencial Aponte al momento de los hechos. Los apelados le imputaron negligencia al mantener un hoyo en el área de los contadores de agua.
Con posterioridad, el Comité y General Accident presentaron en contra de la Autoridad y American una demanda contra tercero. Solicitaron que en la eventualidad de que el tribunal apelado declarara con lugar la demanda, se condenara a la Autoridad y a American a resarcir a General Accident cualquier suma de dinero que ésta viniera obligada a pagar.
Luego de varios incidentes procesales, los cuales es innecesario señalar, el 14 de octubre de 1998, el Tribunal de Primera Instancia dictó sentencia mediante la cual declaró con lugar la demanda presentada por los apelados. El foro apelado condenó a la Autoridad, a American, al Comité y a General Accident a pagar en forma solidaria treinta y cinco mil dólares ($35,000.00) a la menor accidentada como indemnización por los daños y peijuicios sufridos por ésta. A cada uno de sus padres les otorgó cinco mil dólares ($5,000.00) como indemnización por los sufrimientos y angustias mentales que padecieron y quinientos dólares ($500.00) por gastos incurridos por la sociedad de gananciales. Además, el Tribunal de Primera Instancia impuso el pago de cuatro mil dólares ($4,000.00) en concepto de honorarios de abogado.
Inconformes, la Autoridad y American apelaron ante este Foro. Le imputan al Tribunal de Primera Instancia haber incidido al: (1) concluir que fueron negligentes; (2) no concluir que los apelados incurrieron en negligencia; (3) determinar que los daños sufridos por la menor fueron producto de la caída; (4) estimar los daños; (5) no resolver la demanda contra tercero presentada; y (6) imponer honorarios de abogado.
Por su parte, el Comité y General presentaron un escrito de apelación en el cual le imputaron al foro apelado haber errado al: (1) concluir que fueron negligentes; (2) determinar que responden solidariamente en igual proporción que la Autoridad y American; (3) no concluir que los apelados incurrieron en negligencia; (4) determinar que la incapacidad de la menor fue producto de la caída; y (5) estimar los daños. 
II
Tanto la Autoridad y American, como el Comité y General Accident, en los primeros señalamientos de error contenidos en sus respectivos escritos de apelación, cuestionan el que el tribunal a quo concluyera que incurrieron en negligencia al permitir la existencia de un hoyo en el lugar donde ocurrió la caída de la niña. Por otro lado, el Comité y General Accident, en su tercer señalamiento de error, y la Autoridad y American, en su segundo señalamiento de error, sostienen que el tribunal apelado incidió al no concluir que la menor fue negligente, al caminar distraída y utilizar un camino distinto para regresar a su hogar, y sus padres también, al permitirle caminar sin su supervisión. Discutiremos estos señalamientos de error conjuntamente.
Para imponer responsabilidad civil extracontractual bajo el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, es necesario que concurran tres factores, a saber: un daño, una acción u omisión culposa o negligente y la *1000 correspondiente relación causal entre el daño y la conducta culposa y negligente. Cintrón Adorno v. Gómez, 147 D.P.R. _ (1999), 99 J.T.S. 20, a la pág. 619.
El concepto de culpa incluye todo tipo de transgresión humana en el orden legal o moral, así como también cualquier falta que produzca un daño. Colón v. Romero Barceló, 112 D.P.R. 573 (1982); Hernández v. Fournier, 80 D.P.R. 93 (1957). La culpa o negligencia es la falta del debido cuidado, el no anticipar o prever las consecuencias racionales de un acto, que una persona prudente prevería en las mismas circunstancias. La necesidad de una convivencia social ordenada, impone un deber general de corrección y prudencia con respecto a los demás ciudadanos y que un acto es ilícito cuando viola los deberes generales de corrección o conducta correcta. Montalvo v. Cruz, 144 D.P.R. _ (1998), 98 J.T.S. 6.
El Art. 1802, supra, gira inevitablemente en tomo a la función de previsión del individuo como factor determinante de su responsabilidad con su congénere. Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 18 (1987). Una persona no está obligada a prever todos los posibles riesgos que puedan imaginarse en una situación particular, sino aquellos que anticiparía una persona prudente. Blás v. Hosp. Guadalupe, 146 D.P.R. _ (1998), 98 J.T.S. 101.
Finalmente, la teoría de causalidad adecuada postula que “no es causa toda condición sin la cual no se hubiera producido el daño, sino la que ordinariamente lo produce según la experiencia general”. Montalvo v. Cruz, supra; Miranda v. E.L.A., 137 D.P.R. _, 94 J.T.S. 152; Jiménez v. Pelegrina Espinet, 112 D.P.R. 700 (1982).
Al aplicar este trasfondo doctrinario al caso de autos, resulta forzoso concluir que no erró el foro apelado al concluir que la Autoridad y el Comité incurrieron en negligencia. La pregunta obligada que nos tenemos que formular para resolver la disyuntiva planteada por la Autoridad y el Comité, es si era previsible que cualquier persona cayera en el hoyo que se encontraba al lado de la base de concreto de los contadores de agua, producto de un desnivel existente entre el terreno que bordea la base de concreto y ésta.
La respuesta a esta interrogante es en la afirmativa. Bajo el palio de la figura mítica de la persona pmdente o el buen padre de familia, necesariamente hay que arribar a esta conclusión. Cualquier persona pmdente prevería que el mantener un hoyo en el área de los hechos presentaba un riesgo para los transeúntes del lugar, ya que podrían caer en éste y sufrir daños, como en efecto le sucedió a la menor apelada. La Autoridad y el Comité actuaron negligentemente al crear y mantener la instalación de los contadores de agua en la forma que hemos descrito. Esto constituyó una condición peligrosa. Ginés Meléndez v. Autoridad de Acueductos, 86 D.P.R. 518, 525 (1962).
Sin embargo, bajo el mismo criterio, es imposible imputarle negligencia a la niña accidentada y a sus padres como pretenden los apelantes. Sus argumentos nos parecen carentes de base o fundamento alguno, en un intento de eludir toda responsabilidad y desplazar su negligencia hacia éstos. En ningún momento se probó que la niña caminase distraída. Tampoco cabe imputarle negligencia por utilizar una mta diferente para regresar a su casa. También nos llama poderosamente la atención la contención de los apelantes de requerir que los padres de la niña caminasen con ella y que al no hacerlo fueron negligentes. Este argumento es uno llano. Cabría plantearse si los apelantes alegan que una niña de ocho años tiene que andar por las aceras del residencial público donde vive, acompañada de sus padres. Obviamente, no.
En atención a lo expresado, no se cometieron los señalamientos de error primero y segundo contenidos en el escrito de apelación presentado por la Autoridad y American; así como tampoco los señalamientos de error primero y tercero esbozados por el Comité y General Accident.
*1001 III
La Autoridad y American, en el tercer señalamiento de error contenido en su escrito de apelación, le imputan al Tribunal de Primera Instancia haber incidido al determinar que los daños sufridos por la menor fueron producto de la caída ocurrida en el residencial. Basan su reclamo en el hecho de que del informe médico estipulado por las partes surge que las limitaciones que padece actualmente la niña son producto de una condición pre-existente a la caída. El Comité y General Accident formulan igual planteamiento en el cuarto señalamiento de error de su recurso apelativo. Es menester discutir los referidos señalamientos de error conjuntamente con aquellos que cuestionan la estimación de los daños realizada por el tribunal a quo. No tienen razón los apelantes. Veamos.
Es norma jurisprudencial, reiteradamente establecida, aquélla que postula que a nivel apelativo no se intervendrá con las determinaciones de hechos y la adjudicación de credibilidad efectuada por el juzgador de los hechos, en ausencia de error manifiesto, pasión, prejuicio o parcialidad. Blás v. Hosp. Guadalupe, supra, a la pág. 1427. El Tribunal de Primera Instancia es el que tiene la oportunidad de oír y ver declarar a los testigos y apreciar su comportamiento (demeanor), por lo que está en mejor posición de aquilatar la prueba testifical presentada. Cuando existe conflicto de prueba, le corresponde al juzgador de los hechos dirimirlo. Flores v. Soc. de Gananciales, 146 D.P.R. _, 98 J.T.S. 96, a la pág. 1354.
Por otro lado, la doctrina imperante en nuestro ordenamiento jurídico relativa a la estimación y valoración de los daños fue resumida recientemente por el Tribunal Supremo en Blás v. Hosp. Guadalupe, supra, así:
“Como hemos expresado en innumerables ocasiones, la gestión judicial de estimación y valoración de daños es una difícil y angustiosa, no existiendo un sistema mecánico que nos permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas. Rodríguez Cancel v. E.L.A., 116 D.P.R. 443, 451 (1985); Urrutia v. A.A.A., 103 D.P.R. 643 (1975). Hemos reconocido el hecho, en relación con esta difícil y angustiosa labor, que, de ordinario, los tribunales de instancia están en una mejor posición que los tribunales apelativos para evaluar la situación. Ello así, por cuanto éstos son los que tienen contacto directo con la prueba que a esos efectos presenta la parte que los reclama. Publio Díaz v. E.L.A., 106 D.P.R. 854 (1978). Ahí la razón para la norma de abstención judicial. Es decir, que este Tribunal no intervendrá con la decisión que a ese respecto emitan los tribunales de instancia a menos que las cuantías concedidas sean ridiculamente bajas o exageradamente altas. Valdejuli Rodríguez v. A.A.A., 99 D.P.R. 917 (1971); Urrutia v. A.A.A., ante. Además, la parte que ante este Tribunal solicita la modificación de las sumas concedidas a nivel de instancia, viene obligada a demostrar la existencia de las circunstancias que hacen meritorio el que se modifiquen las mismas. Canales Velázquez v. Rosario Quiles, 107 D.P.R. 757 (1978); Rodríguez Cancel v. E.L.A., ante. ”
Apliquemos, pues, las referidas doctrinas a los hechos particulares del caso de autos. El foro apelado, en su extensa y bien fundamentada sentencia, formuló unas detalladas determinaciones de hechos en relación a los daños sufridos por la menor apelada. De éstas se desprende que como consecuencia del accidente, la menor estuvo un (1) mes acostada, tres (3) meses con un yeso y seis (6) meses en su casa sin poder llevar a cabo ninguna actividad, inclusive no pudo asistir a la escuela durante el primer semestre escolar del año.
Igualmente, el Tribunal de Primera Instancia incluyó íntegramente en la sentencia apelada el contenido esencial del informe médico suscrito por el Dr. Juan Llompart (Dr. Llompart). En el mismo el Dr. Llompart describe la lesión sufrida por la niña al caerse como una "... fractura patológica a través de un área previamente debilitada por un proceso pre-existente; en este caso, un fibroma no osificante en el tercio distal de la tibia derecha”.
*1002 El Dr. Llompart reconoce en su informe que la fractura ha consolidado totalmente. Además, que las limitaciones que padece la niña en la actualidad están relacionadas con la presencia de un área de debilidad ósea producida por la existencia del fibroma no osificante localizado en la tibia derecha. Estimó el impedimento físico de las funciones de la pierna derecha en un cinco porciento (5%), el cual se refleja en un impedimento de dos porciento (2%) de las funciones fisiológicas generales.
El Tribunal de Primera Instancia determinó, como cuestión de hecho, que la menor sufrió mucho dolor al momento de fracturase la tibia, durante el tratamiento médico y posterior recuperación. Además, que a consecuencia del accidente se ha visto privada de vivir una vida normal, como cualquier niña de su edad. La niña también ha presentado un estado de ánimo negativo.
Tomando en cuenta todas las determinaciones anteriores, el Tribunal de Primera Instancia estimó los daños padecidos por la menor en treinta y cinco mil dólares ($35,000.00). Si bien es cierto que erró el foro apelado al considerar las incapacidades de cinco porciento (5%) de la pierna derecha y dos porciento (2%) de las funciones generales como una circunstancia al estimar los daños de la menor accidentada, ya que las mismas son el resultado de una condición preexistente, no podemos omitir las determinaciones de hechos apoyadas por la prueba, relativas a los sufrimientos y angustias mentales padecidos por la niña apelada. En ausencia de error manifiesto, pasión, prejuicio o parcialidad, no intervendremos con las mismas. Blás v. Hosp. Guadalupe, supra, a la pág. 1427.
El foro apelado tuvo el contacto directo con la pmeba, vio y oyó declarar a la menor. A base de la prueba oral y documental que le fue presentada, estimó los daños de la niña. La cuantía que le fue concedida no es una exageradamente alta. Por lo tanto, resulta imperativo abstenemos de intervenir con la misma. Blás v. Hosp. Guadalupe, supra.
Igual razonamiento seguimos respecto a las cuantías concedidas a los padres de la menor accidentada. El Tribunal de Primera Instancia incluyó en la sentencia apelada determinaciones de hechos que sustentan las sumas concedidas a éstos. A cada uno de los padres se le concedió cinco mil dólares ($5,000.00) como compensación por los sufrimientos y angustias mentales padecidos. Dicha cuantía no es una exageradamente alta. No intervendremos con la misma. Blás v. Hosp. Guadalupe, supra.
IV
La Autoridad y American, en su quinto señalamiento de error, sostienen que el Tribunal de Primera Instancia no resolvió la demanda contra tercero presentada en su contra por el Comité y General Accident. Argumentan que el resultado de ésto es que el foro apelado no adjudicó a cada co-causante del daño su responsabilidad. El Comité y General Accident reprodujeron este argumento en su segundo señalamiento de error. Les asiste la razón. Veamos.
En materia extracontractual o ámbito de la culpa aquiliana cuando son dos o más los culpables de un daño, su responsabilidad es solidaria. Esta responsabilidad solidaria se impone a los cocausantes de un perjuicio porque cada uno de los que han cooperado o actuado conjuntamente en el acto ilícito son responsables de la totalidad del daño producido. En tales circunstancias, cada uno queda obligado personalmente por razón de su propia culpa. Arroyo v. Hospital La Concepción, 130 D.P.R. 44 (1992). Por lo tanto, en la relación intema entre los deudores, la obligación se divide conforme a la proporción en que la negligencia de cada uno contribuyó a la ocurrencia del daño. Torres Ortiz v. E.L.A., 136 D.P.R. _, 94 J.T.S. 100.
El Tribunal de Primera Instancia concluyó en su sentencia que el Comité, General Accident, la Autoridad y American, incurrieron en responsabilidad civil extracontractual al amparo del Art. 1802 del Código Civil, *1003 supra. No obstante, no adjudicó la proporción en que la negligencia de cada parte contribuyó a la ocurrencia del daño, dejando sin resolver la demanda contra tercero presentada por el Comité y General Accident en contra de la Autoridad y American. Por lo tanto, procede devolver el caso al foro apelado para esos fines.
V
Finalmente, la Autoridad y American cuestionan en su sexto señalamiento de error la imposición de honorarios de abogado. Sobre este particular, la Regla 44.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1, establece que cuando una parte ha procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado.
El concepto “temeridad” no está expresamente definido por dicha Regla, pero ha sido ampliamente definido por nuestra jurisprudencia. En términos generales, se considera temeraria toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. Blás v. Hosp. Guadalupe, supra, a la pág. 1437.
El propósito de la imposición de honorarios de abogado en casos de temeridad es “establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito”. Fernández v. San Juan Cement Co., Inc., 118 D.P.R. 713, 718 (1987).
Además, la imposición de honorarios de abogado tiene como propósito disuadir la litigación innecesaria y alentar las transacciones mediante la imposición de sanciones a la parte temeraria para compensar los perjuicios económicos y las molestias sufridas por la otra parte. Blás v. Hosp. Guadalupe, supra, a la pág. 1437.
A la luz de los principios expuestos, procede la eliminación de la condena de honorarios de abogado en el caso de autos. La conducta procesal de las partes apelantes no puede enmarcarse en ninguno de los supuestos que la jurisprudencia ha considerado como conducta temeraria. El pleito de autos se caracterizó por el debate relativo a si en efecto hubo negligencia y qué parte(s) la causó(aron).
Erró el Tribunal de Primera Instancia al imponer el pago de honorarios de abogado.
VI
Por los fundamentos expuestos, se modifica la sentencia apelada a los fines de eliminar la condena de honorarios de abogado y devolver el caso al Tribunal de Primera Instancia para que adjudique la demanda contra tercero presentada por el Comité y General Accident en contra de la Autoridad y American y asigne los porcientos de negligencia incurridos por cada una. Así modificada, se confirma.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2000 DTA 60
1. Este Tribunal, mediante resolución de 16 de agosto de 1999, consolidó ambos recursos.
*1004 2. Cuarto señalamiento de error planteado por la Autoridad y American y quinto señalamiento de error esbozado por el Comité y General Accident.