Peñagarícano Soler, Jueza Ponente
*1169 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos, el Sr. Víctor R. Pérez Pillot (en adelante, Sr. Pérez), mediante Certiorari presentado el 5 de diciembre de 2002. Nos solicita revisemos la Resolución emitida el 14 de octubre de 2002, por el Tribunal de Primera Instancia (en adelante, TPI), notificada el 5 de noviembre de 2002, en la acción civil núm. K DI2000-0461 (708). Mediante la aludida Resolución, el foro de instancia alteró la pensión alimentaria previamente fijada en el proceso de divorcio de las partes de epígrafe.
Habiendo analizado los escritos presentados por las partes, a la luz del derecho aplicable, resolvemos expedir el auto de Certiorari y revocar la Resolución recurrida. 
I
El 10 de marzo de 2000, el TPI emitió la Sentencia de divorcio entre el Sr. Pérez y la Sra. Diana Margarita Landrón (en adelante, Sra. Landrón). Como parte del dictamen, las partes estipularon que el Sr. Pérez sufragaría la cantidad de $130.00 mensuales como pensión alimentaria para la menor C.D. Pérez Landrón. La menor, al momento del divorcio contaba con 4 años y 9 meses y era la única hija habida entre las partes. Con fecha de 29 de marzo de 2001, la Sra. Landrón presentó una Moción Solicitando Revisión y Modificación de Orden Sobre pensión Alimentaria de Menores. Entre otras cosas, la recurrida solicitó se aumentara la pensión a $200.00 mensual por los gastos ordinarios de la alimentista. Alegó, que el Sr. Pérez tuvo un aumento de sueldo en su trabajo y que contaba con la renta de una propiedad alquilada por $600.00 al mes.
Así las cosas, el 13 de junio de 2001, el TPI emitió una Orden por la cual concedió 30 días al Sr. Pérez para replicar la solicitud de aumento en pensión alimentaria. El 20 de julio de 2001, el Sr. Pérez presentó su Oposición a Solicitud de Revisión y Modificación de Pensión Alimentaria de Menores. Argüyó que en la Sentencia de divorcio se estipuló lo referente a la pensión alimentaria de la menor. Además, entre otras cosas, indicó que no habían transcurrido los 3 años dispuestos por la Ley de Sustento de Menores, infra, para efectuar cambios a la pensión, en ausencia de cambios significativos. El 24 de julio de 2001, el TPI emitió una Orden refiriendo el caso de marras a la Examinadora de Pensiones. Con fecha de 3 de agosto de 2001, la Sra. Landrón presento una Moción Solicitando Anotación y Vista en Rebeldía. El 16 de agosto de 2001, mediante Orden, el foro de instancia anotó la rebeldía al aquí peticionario. El 6 de septiembre de 2001, el Sr. Pérez presentó una Moción Informativa y Solicitud de Reconsideración a Notificación Anotando la Rebeldía al Promovido. El 10 de septiembre de 2001, el foro de instancia dejó sin efecto la anotación de rebeldía al peticionario. 
Con fecha de 15 de octubre de 2001, la Sra. Landrón presentó una Moción Solicitando Orden Judicial. El 25 de octubre de 2001, el Sr. Pérez presentó una Moción Informativa, solicitando copia de la planilla de la Sra. Landrón. El 27 de noviembre de 2001, el foro de instancia emitió una Orden por la cual instruyó a los representantes legales de las partes a notificarse mutuamente las mociones del caso. Además, concedió 10 días *1170 para que las partes presentaran sus planillas actualizadas con evidencia documental que acreditara lo allí expuesto. Con fecha de 14 de diciembre de 2001, la Sra. Landrón presentó una Moción en Cumplimiento de Orden y Sometiendo Planilla Informativa. El 18 de diciembre de 2001, se celebró la vista ante la Examinadora de Pensiones.
En tanto, el 4 de junio de 2002, el Sr. Pérez presentó una Moción Informativa y Solicitud de Vista en Reconsideración. Entre otras cosas, objetó las determinaciones tomadas por la Examinadora de Pensiones. Reiteró que lo referente a la pensión se había estipulado en el decreto de divorcio. Asimismo, indicó que en adición a la menor, éste era padre de otros cuatro menores, a los cuales les proporcionaba pensión alimentaria. Con fecha de 14 de enero de 2002, la Sra. Landrón presentó una Moción Anejando Prueba Documental y en Solicitud de Orden Judicial. Mientras, con fecha de 16 de enero de 2002, se presentó la Recomendación de la Examinadora de Pensión Alimentaria. Allí, la Examinadora recomendó que de acuerdo a las guías mandatorias se designara una pensión por la suma de $236.00 al mes.
En tanto, el 22 de enero de 2002, el foro a quo emitió una Resolución aprobando la recomendación de la Examinadora de Pensiones dictando una pensión alimentaria por $118.00 quincenales. El 28 de enero de 2002, mediante Orden, el TPI instruyó se proveyera información relacionada al contrato de arrendamiento de la propiedad del Sr. Pérez por Sección 8. Lo anterior, conforme lo solicitado por la Sra. Landrón. El 4 de febrero de 2002, el Sr. Pérez presentó una Moción de Reconsideración al Amparo de la Regla 47 de Procedimiento Civil. En la misma, el Sr. Pérez volvió a afirmar que no existían cambios significativos que justificaran la alteración de la pensión. En idéntica fecha, el Sr. Pérez presentó una Moción Solicitando Declaración de Hechos (sic) Probados y Conclusiones de Derecho al Amparo de la Regla 43.2 y 43.3 de Procedimiento Civil. El 18 de marzo de 2002, el TPI emitió una Resolución Enmendada, añadiendo el Informe y hoja de Trabajo de la Examinadora de Pensiones. Con fecha de 13 de mayo de 2002, la Sra. Landrón presentó una Moción Urgente Sobre Vista de Desacato. 
El 20 de junio de 2002, el TPI emitió una Orden por la cual concedió 10 días a los representantes legales para que evaluaran el informe de la Examinadora de Pensiones. Asimismo, señaló una vista para el 31 de julio de 2002. El 13 de julio de 2002, el TPI reseñaló la vista para el 19 de agosto de 2002 ordenando a que se notificasen los informes rendidos por la Examinadora de Pensiones el 11 de marzo y 22 de mayo de 2002. El 26 de agosto de 2002, el Sr. Pérez presentó una Moción en Cumplimiento de Orden y Otros Extremos. En ésta, conforme lo argumentado en la vista evidenciaría de 19 de agosto de 2002, el Sr. Pérez presentó evidencia médica sobre el padecimiento que no le permite continuar laborando como músico. Lo anterior, para sostener su argumento en cuanto a que ya no recibía ingresos adicionales como músico. 
Así las cosas, el 14 de octubre de 2002, el foro de instancia emitió la Resolución recurrida. En ésta, el TPI concluyó que el Sr. Pérez en efecto había tenido un aumento en su salario, y concedió una pensión alimentaria por la suma de $363.65 al mes. Inconforme con esta determinación, el 5 de diciembre de 2002 acude ante nos el Sr. Pérez mediante recurso de Certiorari. En el mismo, este indicó los siguientes señalamientos de error:

“ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR MEDIANTE INFERENCIAS QUE EL INGRESO MENSUAL NETO DEL ALIMENTANTE ES DE $2,011.34 CUANDO SU INGRESO NETO REAL ES DE $1058.82.

ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL IMPUTAR AL PETICIONARIO-APELANTE UN INGRESO MENSUAL ADICIONAL ASCENDENTE A $800.00 POR HABER SIDO MUSICO ALLA PARA EL 2000, CUANDO ESTE ACTUALMENTE NO TRABAJA COMO TAL POR SU CONDICION DE SALUD, Y TRABAJA COMO EMPLEADO PUBLICO A TIEMPO COMPLETO, Y AL NO HACERLE- LAS DEDUCCIONES MANDATORIAS PARA CONVERTIRLO EN INGRESO NETO ANTES DE APLICARLE LAS 
*1171
GUIAS.

ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL IMPUTARLE AL PETICIONARIO-APELANTE UN INGRESO POR RENTAS DE $125.00 SIN CONSIDERAR LA RENTA QUE PAGABA EL PLAN 8, MENOS LA HIPOTECA QUE GRAVA LA PROPIEDAD.

ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL NO CONSIDERAR LA DEDUCCIÓN MANDATORIA CORRESPONDIENTE AL PLAN DE AHORROS DE EMPLEADOS GUBERNAMENTALES DEL PETICIONARIO (sic)-APELANTE PARA COMPUTAR LA PENSION ALIMENTARIA.

ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL CONSIDERAR LA SUMA DE $3,000.00 ENTREGADOS ALA MENOR COMO QUE APLICABAN A UNA LIQUIDACIÓN DE SOCIEDAD LEGAL DE GANANCIALES CUANDO LO QUE EXISTIA ERA UNA COMUNIDAD DE BIENES Y CUANDO DICHO ACUERDO FUE ELIMINADO EN LA VISTA DE DIVORCIO POR LAS PARTES Y ASI OBRA EN AUTOS.

ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL NO CONSIDERAR LA PROCEDENCIA Y DESTINO DE LOS $3,000.00 RECIBIDOS POR LA PETICION ARIA-APELAD A PARA CUBRIR GASTOS Y NECESIDADES DE LA MENOR POR ENCIMA DE LA PENSION FIJADA EN EL DIVORCIO.”
El 5 de diciembre de 2002, el peticionario presentó una Moción Solicitando Regrabación de la Vista del 19 de agosto de 2002. El 30 de enero de 2003, mediante Resolución, concedimos 30 días a la parte recurrida para discutir la procedencia de la solicitud de trascripción de la vista. Además, ordenamos a la Secretaria General que procediera a efectuar el cambio de clasificación del recurso a Certiorari por haber sido presentado incorrectamente como una Apelación. Así pues, el 5 de marzo de 2003, la Sra. Landrón presentó una Moción de Desestimación. El 11 de marzo de 2003, emitimos Resolución concediendo 10 días al peticionario para expresarse en tomo a la moción de desestimación. El 24 de marzo de 2003, el Sr. Pérez presentó una Moción Urgente en Solicitud de Prorroga. El 4 de abril de 2003, concedimos la prorroga solicitada.
El 28 de agosto de 2003, mediante Resolución, concedimos 5 días al Sr. Pérez para que presentara finalmente su oposición a la moción desestimatoria. Así, el 11 de septiembre de 2003, el Sr. Pérez presentó una Moción Informativa en Cumplimiento de Orden. El 16 septiembre de 2003, por Resolución, concedimos 20 días al peticionario para que procediera a transcribir la regrabación de la vista celebrada el 19 de agosto de 2002. El 27 de octubre de 2003, el Sr. Pérez sometió una Moción en Cumplimiento de Orden. El 6 de noviembre de 2003, emitimos Resolución concediendo 10 días al peticionario para presentar la trascripción de la vista. El 26 de noviembre de 2003, el Sr. Pérez presentó una Moción Informativa en Cumplimiento de Orden. El 3 de diciembre de 2003, por Resolución, solicitamos al peticionario que presentara 3 copias adicionales de la trascripción por no haberse presentado junto al original. El 24 de diciembre de 2003, mediante Moción en Cumplimiento de Orden, el Sr. Pérez acreditó cumplir con lo solicitado por este Foro.
II
Sabido es que la obligación de un padre proveer alimentos a sus hijos, es una ineludible y de probado interés público. Argüello López v. Argüello García, 2001 J.T.S. 127; Rodríguez Amadeo v. Santiago Torres, 133 D.P.R. 785 (1993); Rivera Maldonado v. Cabrera Olivera, 130 D.P.R. 39 (1992). El aludido interés público es uno de ordenación suprema que se fundamenta, entre otras cosas, en principios universalmente reconocidos de solidaridad humana, así como en los derechos ineludibles del ser humano. Maldonado v. Cruz Dávila, 2004 J.T.S. 8. Lo anterior está recogido en la Declaración de Política Pública de la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986 (en adelante, Ley de Sustento de Menores), al expresar en lo pertinente:

“Se declara que es política pública del Estado Libre Asociado de Puerto Rico procurar que los padres o 
*1172
las personas legalmente responsables contribuyan, en la medida en que sus recursos lo permitan, a la manutención y bienestar de sus hijos o dependientes mediante el fortalecimiento de los sistemas y la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de las pensiones alimentarias....

La obligación de alimentar a los menores se fundamenta en el derecho a la vida, configurado como un derecho inherente a la persona. Proveer para alimentos de menores está revestido del más alto interés público. Esta obligación está consagrada en el Código Civil de Puerto Rico. El padre y la madre tienen, respecto a sus hijos no emancipados, el deber de alimentarlos, acompañarlos, educarlos y representarlos en todas las acciones que redunden en su beneficio. ” 8 L.P.R.A. sec. 502.
Esto tiene su génesis primordialmente en lo expuesto en el Art. 143 y Art. 153 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 562 y 601. Así, pues, “[s]e entiende por alimentos todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia. Los alimentos comprenden también la educación e instrucción del alimentista, cuando es menor de edad. ” Artículo 142 del Código Civil, 31 L.P.R.A. sec. 561. “...Ello incluye tanto las necesidades físicas como intelectuales del alimentista. Viera v. Morell, 115 D.P.R. 4 (1983); Negrón Rivera y Bonilla, Ex parte, supra; Ríos Rosado v. Vidal Ramos, 134 D.P.R. 3 (1993). El concepto de educación e instrucción abarca los estudios cursados en escuela elemental, escuela superior y en la universidad o escuela vocational....”. Argüello López v. Argüello García, supra, a la pág. 91. Véase además, Maldonado v. Cruz Dávila, supra.
Uno de los elementos a tomar bajo consideración al momento de fijar la cuantía de la pensión alimentaria, es la capacidad económica del alimentante y la necesidad del alimentista. En otras palabras, el Código Civil en su articulado núm. 146 fija, en lo pertinente: “jija cuantía de los alimentos será proporcionada a los recursos del que los day a las necesidades del que los recibe, y se reducirán o aumentarán en proporción a los recursos del primero y a las necesidades del segundo. ”31 L.P.R.A. sec. 565.
Así se expresa en la Ley de Sustento de Menores, supra, al manifestarse que “[pjara la determinación de los recursos económicos del obligado a pagar una pensión alimentaria, se tomará en consideración, en adición al ingreso neto ordinario, el capital o patrimonio total del alimentante. Se considerarán iguales criterios de la persona custodia para el cómputo proporcional a serle imputado a éste.” 8 L.P.R.A. sec. 518; Chévere v. Levis, 2000 J.T.S. 56. Además, hay que tomar en atención que para determinar el monto de la obligación alimentaria del alimentante, se debe considerar que en los casos en donde hay más de un alimentante procede repartir entre ellos el pago de la pensión, proporcionalmente a su caudal. Art. 145 del Código Civil, 31 L.P.R.A. sec. 564; Argüello López v. Argüello García, supra, a la pág. 92.
El Tribunal Supremo de Puerto Rico ha señalado que para poder determinar la capacidad económica de cada alimentante, es necesario tomar en cuenta la totalidad de los ingresos que éste devengue. Ello, sin limitaciones a lo que parezca informado en la Planilla de Información Personal (PIPE). Lo anterior, implica que el foro de instancia no está limitado a apreciar sólo la evidencia documental o testifical en tomo a los ingresos. Más bien, este foro habrá de considerar la capacidad de generar ingresos del alimentante, su estilo de vida, la naturaleza y cantidad de propiedades con que cuenta, el carácter de su empleo o profesión y cualesquiera otras fuentes de ingreso. Id.
De igual forma, estamos conscientes de que los tribunales estamos compelidos a escrutar la pmeba que les es presentada, para prescribir la situación económica real del alimentante. Esto, en especial de aquellos casos en donde el alimentante aduce que no cuenta con ingresos suficientes para cumplir con su responsabilidad alimentaria. Id.
En tanto, la Ley de Sustento de Menores, supra, estipula de forma prístina, que:
*1173 “...toda orden de pensión alimentaria será revisada y modificada cada tres (3) años desde la fecha en que la orden fue establecida o modificada, en caso de que se presente una solicitud de revisión y modificación por el alimentante, alimentista, la Administración,... Toda orden de pensión alimentaria de menores emitida por el tribunal o la Administración deberá apercibir a las partes de su derecho a solicitar una revisión y modificación de su orden, y para aquellos casos bajo la jurisdicción de la Administración, dicha notificación se continuará expidiendo al menos una vez cada tres años. No obstante, cualquier ley o disposición en contrario, el requisito de cambio significativo o imprevisto en las circunstancias de alguna de las partes se cumple si la aplicación de las Guías Mandatorias para Fijar y Modificar Pensiones Alimenticias en Puerto Rico adoptadas según se dispone en este capítulo, resulta en una cantidad diferente a la pensión corriente actualmente ordenada....”. 8 L.P.R.A. sec. 518.
Además, allí se expone en tomo a la revisión y modificación de cada tres años que “...la revisión...podrá estar basada en la aplicación de un ajuste en el costo de la vida....”. Id. Asimismo, la Ley indica que “[e]l Administrador o el tribunal, a solicitud de parte o a su discreción, podrá iniciar el procedimiento para revisar o modificar una orden de pensión alimentaria en cualquier momento y fuera del ciclo de tres (3) años, cuando entienda que existe justa causa para así hacerlo, tal como variaciones o cambios significativos o imprevistos en los ingresos, egresos, gastos o capital del alimentante o alimentista, o en los gastos, necesidades o circunstancias del menor, o cuando exista cualquier otra evidencia de cambio sustancial en circunstancias. ” Id.
Por otra parte, como norma general, los tribunales apelativos se han de abstener en ausencia de error, pasión, prejuicio o parcialidad, de intervenir en las determinaciones de hechos y la apreciación de la prueba realizada por los tribunales de instancia. Argüello López v. Argüello García, supra; Blas v. Hosp. Guadalupe, 146 D.P.R. 267 (1998); Belk v. Martínez, 146 D.P.R. 215 (1998); Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172 (1985); Pérez Cruz v. Hosp. La Concepción, 115 D.P.R. 721 (1984). Sin embargo, los tribunales apelativos estamos sin duda alguna, en idéntica posición que los tribunales de instancia en cuanto a la apreciación de prueba documental. Podemos, sin falta, atender y evaluar la pmeba documental que sea necesaria. Trinidad v. Chade, 2001 J.T.S. 10.
Bajo el crisol doctrinario previamente esbozado, resolvemos la controversia del caso de marras.
III
Por estar íntimamente relacionados entre sí, atenderemos en conjunto los primeros cuatro señalamientos de error.
En el caso de autos, la parte peticionaria, en suma, arguye que la modificación de la pensión alimentaria por parte del foro de instancia fue errónea, ya que no ha transcurrido el término dispuesto para ello en la Ley de Sustento de Menores.
Por su parte, hallamos que la parte recurrida solicitó un aumento en la pensión alimentaria aproximadamente un año después de la sentencia de divorcio. En esencia, ésta alegó que por razón de que la menor en cuestión había iniciado sus estudios en el primer grado, sus necesidades habían aumentado. A la vez, planteó que el peticionario había tenido un aumento de sueldo y que recibía dineros de cierta propiedad alquilada.
El Tribunal Supremo ha expresado, en lo pertinente: “jija doctrina ha establecido que la alteración del convenio o estipulación sobre pensión alimenticia (sic) en ocasión de un divorcio procederá solamente cuando exista un cambio sustancial en las circunstancias que dieron lugar u originaron el mismo. No basta con cualquier cambio en las circunstancias; éste tiene que ser sustancial. E. Fosar Benlloch, Estudios de Derecho de Familia, Barcelona, Ed. Bosch, 1986, T. II Vol. 1, pág. 309; López de Alarcón, op.cit., pág. 329; C.M. *1174 Entrena Klett, Matrimonio, Separación y Divorcio, 2da ed., Pamplona, Ed. Aranzadi, 1984, pág. 588.” Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61 (1987), a la pág. 78.
Asimismo, anotó que una vez las estipulaciones referentes a pensiones alimentarias son aceptadas por los tribunales, las mismas se modificarán cuando se demuestre que ha ocurrido un cambio sustancial que afecte la capacidad del alimentante. Id. Lo anterior ha de responder a intereses arraigados en tratar de aminorar la presentación reiterada de solicitudes para modificar pensiones que han sido debidamente estipuladas. Principios de juiciosa utilización de los recursos judiciales secundan esta visión.
Del análisis al expediente del caso de autos, y de los documentos allí contenidos, no encontramos la prueba en que se basó el foro recurrido para alterar de forma notable la pensión alimentaria previamente estipulada por las partes, antes del término provisto para ello por ley. Veamos.
De entre sus determinaciones de hechos, el foro a quo detalla que el Sr. Pérez recibe ingresos como músico equivalentes a $800.00 al mes. Ello, alegadamente, a base de lo expresado por éste en la PIPE de marzo de 2000. Sin embargo, de la PIPE que éste presentara en junio de 2001, ello no se desprende. Lo anterior, pues, según lo postulado por el peticionario, ya no se desempeña como músico a tiempo parcial debido a una condición médica. A esos efectos, se colige de los documentos analizados que el Sr. Pérez padece de espasmos musculares por los cuales recibe tratamiento de rehabilitación.
Además, de la transcripción de la vista celebrada ante el foro de instancia el 19 de agosto de 2002, se desprende que el peticionario le indicó al TPI que actualmente no trabajaba como músico, así como las razones para ello. Posteriormente, conforme lo ordenado por ese foro, éste sometió la evidencia médica a esos efectos. No obstante, y de forma sorprendente, el TPI procedió a esgrimir lo siguiente como apoyo para su alteración de la pensión:
“El alimentante es músico y por ello recibe ingresos adicionales. Actualmente presenta problema (sic) de espasmos musculares, condición médica que no lo incapacita si recibe terapias y toma medicamentos. Se le imputa (sic) $800.00 mensuales por concepto de estos ingresos, conforme fue informado en su planilla de información personal y económica de marzo de 2000. ” Resolución, pág. 3, folio núm. 4 en Apéndice de autos.
En tanto, el TPI procedió a imputar unas partidas por gastos de matrícula y mensualidades Así, pues, el foro de instancia expuso: “[l]a madre con custodia reclama gastos por concepto de vivienda...para ella y sus tres hijos, matrícula ($450 anuales) y educación privada ($300 mensuales por 10 meses) y cuido ($60 mensuales) cuando no hay clases...”. Resolución, pág. 2, folio núm. 3 en Apéndice de autos. En cuanto a estos gastos, conforme uno de los informes de la Examinadora de Pensiones, esta funcionaría no tuvo prueba. Véase, Informe de la Examinadora de Pensiones Alimentarias, folio núm. 11 en Apéndice de autos. No obstante, de la transcripción de la vista celebrada ante el TPI el 19 de agosto de 2002, se desprende lo siguiente:

“P ¿Cuánto usted está pagando por ese cuido a la escuela?

R Ahora está en una nueva escuela, pues ya la escuelita ya (sic) no tenía más grado y la tuve que cambiar de colegio.

P ¿Yadonde está ahora?

R En el Colegio Nuestra Señora de Lourdes....

*1175
P Okey. ¿Y cuánto paga ahora de matrícula?

R Cuatrocientos...

HON. JUEZ: (Dirigiéndose al Sr. Pérez Pillot)

¿ Usted pensó eso al momento de tener tanto muchacho?

HON. JUEZ: (Ala testigo)

P ¿Cuántopaga ahora?

R Ahora pago, eh, son $166 mensual, más $60 del cuido...

P ¿Ymatrícula?

R Fueron, en esta fueron $360.... ”. Transcripción, a las págs. 39-40, en autos.
Evidentemente, no armonizan las partidas por matrícula y mensualidad alegadas por la recurrida con la determinación final de la magistrado de instancia al momento de hacer sus cálculos para imputar un aumento en la pensión alimentaria.
Sin embargo, el asunto medular a este caso lo es, el que la letra clara de la ley aplicable, Ley de Asuntos de Menores, supra, enuncia que en ausencia de cambios.significativos o sustanciales en los ingresos del alimentista o necesidades del menor, no se habrá de modificar las pensiones alimentarias en menos de tres años. Lo anterior, es un mandato claro y de aplicación tanto para a aquellos casos en donde el alimentante reclame una rebaja de la pensión alimentaria, como para cuando se solicite un aumento en la misma. No empece es sabido que las pensiones no son cuestiones inalterables, ello no significa que cualquier cambio es merecedor de una modificación. De otra forma, no habría límites a la alteración de las pensiones, pues es de esperarse que las personas, así como sus circunstancias económicas, han de experimentar cambios en algún momento. Por ello, lo neurálgico es que el cambio ha de ser sustancial.
Es preciso destacar que el legislador ha tenido a bien el no alterar lo expuesto en la sección 518 de la Ley de Sustento de Menores, supra, dejando así la norma de que al menos en 3 años no se habrá de modificar la pensión alimentaria, excepto en circunstancias significativas. En este caso, no se desprende que en efecto haya habido algún cambio de naturaleza sustancial que derrote lo preceptuado por la Asamblea Legislativa en el Art. 19 de la Ley de Sustento de Menores, supra, (sección 518). Incidió el TPI al conceder un aumento de pensión sin que haya transcurrido el término por ley para así hacerlo, y en ausencia de cambios sustanciales que lo ameritaran. Por razón del resultado al cual llegamos, no es necesario atender los restantes errores.
IV
Por los fundamentos anteriormente expresados, se expide el auto de Certiorari y se revoca el aumento de pensión alimentaria ordenado por el Tribunal de Primera Instancia.
Así lo acordó y lo manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
*1176 ESCOLIOS 2004 DTA 70
1. Originalmente, el caso de marras fue incorrectamente presentado como una Apelación. Así, fue clasificado como el KLAN-02-01336. Ante ello, mediante Resolución de 30 de enero de 2003, ordenamos a la Secretaria General del Tribunal que reclasificara el presente recurso como un Certiorari.
2. Véase, folio núm. 13 en Apéndice de autos.
3. Véase, folio núm. 22 en Apéndice de autos.
4. Véase, folio núm. 26 en Apéndice de autos.
5. Véase, folio núm. 27 en Apéndice de autos.
6. Véase, folio núm. 46 en Apéndice de autos.
7. Véase, folio núm. 44 en Apéndice de autos.
8. Véase, folio núm. 48 en Apéndice de autos.
9. Véase, folio núm. 49 en Apéndice de autos.
10. Ello, en vista de que conforme lo indicado por el Sr. Pérez, éste había presentado su oposición a la petición de aumento de pensión oportunamente. Véase, folios núms. 56 y 49 en Apéndice de autos.
11. Véase, folio núm. 57 en Apéndice de autos.
12. Véase, folios núms. 60 en Apéndice de autos.
13. Véase, folios núms. 64-65 en Apéndice de autos.
14. Véase, folio núm. 66 en Apéndice de autos.
15. Véase, folio núm. 79 en Apéndice de autos.
16. Véase, folio núm. 82 en Apéndice de autos.
17. Véanse, folios núms. 87-90.
18. Véase, folio núm. 94 en Apéndice de autos.
19. Véase, folio núm. 100 en Apéndice de autos.
20. Véase, folio núm. 104 en Apéndice de autos.
21. Véase, folio núm. 107 en Apéndice de autos.
22. Véase, folio núm. 109 en Apéndice de autos.
23. Véase, folio núm. 114 en Apéndice de autos.
24. Véase, folio núm. 116 en Apéndice de autos.
25. Véase, folio núm. 117 en Apéndice de autos.
*1177 26. Véase, documentos folios núms. 120-126.
27. Véase, folio núm. 2 en Apéndice de autos.
28. El Tribunal Supremo acotó: “[e]n López v. Rodríguez, supra, incluso le impusimos al foro de instancia la obligación de tomar en cuenta en estos casos la realidad de la economía subterránea que prevalece en Puerto Rico. ...”. Argüello López v. Argüello García, supra, a la pág. 92.