ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **JAVIER QUIÑONES VELÁZQUEZ**<br>**MIRIAM PACHECO ARROYO**<br>PETICIONARIA(S)<br><br>**EX PARTE**<br><br>**GRACELIE A. QUIÑONES PACHECO**<br>PARTE CON INTERÉS | KLAN202400495 | *APELACIÓN*<br>procedente del Tribunal de Primera Instancia, Sala Superior de **MAYAGÜEZ**<br><br>Caso Núm.<br>**ISRF200501881** (302)<br><br>Sobre:<br>Divorcio (Alimentos) |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

*Barresi Ramos*, juez ponente.

**S E N T E N C I A**

En San Juan, Puerto Rico, hoy día 6 de mayo de 2025.

Comparece ante este Tribunal de Apelaciones, la joven **GRACELIE A. QUIÑONES PACHECO** (joven **QUIÑONES PACHECO**) mediante *Apelación Civil* entablada el 20 de mayo de 2024. En su recurso, nos solicita que revisemos la *Resolución u Orden* promulgada el 26 de marzo de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de Mayagüez.[1] Tal determinación judicial, relevó al señor **JAVIER QUIÑONES VELÁZQUEZ** (señor **QUIÑONES VELÁZQUEZ**) del pago de la pensión alimentaria efectivo a la fecha de emancipación, por razón de matrimonio, de la joven **QUIÑONES PACHECO**.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

**- I -**

El 20 de enero de 2006, el foro primario dictó *Sentencia* sobre divorcio por mutuo consentimiento en la cual incluyó determinaciones sobre la pensión alimentaria, custodia, patria potestad y relaciones filiales.

---

[1] Esta determinación judicial fue notificada y archivada en autos el 27 de marzo de 2024. Apéndice de la *Apelación Civil*, págs. 23- 24.

Tiempo después, el 11 de febrero de 2022, mediante *Resolución sobre Revisión de Pensión Alimentaria* decretada por la Administración para el Sustento de Menores (ASUME) se fijó una pensión alimentaria de $827.00 mensuales en beneficio de la joven **QUIÑONES PACHECO**, ello efectivo al 29 de octubre de 2019.[2] Asimismo, se dispuso por concepto de retroactividad de los alimentos que existían atrasos ascendentes a $16,950.68. Para el saldo de la deuda, se impuso un plan de pago de $200.00 mensuales.

Más tarde, el 6 de febrero de 2024, el señor **QUIÑONES VELÁZQUEZ** presentó una *Moción Urgente Solicitando Relevo del Pago de Alimentos*.[3] Expuso que, el 9 de noviembre de 2023, la joven **QUIÑONES PACHECO** contrajo matrimonio con el señor Adriel Jesús Rodríguez en Florida, Estados Unidos de América. En consecuencia, 7 de febrero de 2024, se determinó *Resolución u Orden* en la cual, entre otras cosas, se concedió un término de quince (15) días a la señora **MIRIAM PACHECO ARROYO** (señora **PACHECO ARROYO**) para exponer si, en efecto, la joven **QUIÑONES PACHECO** había contraído matrimonio.[4]

Acto seguido, el 26 de febrero de 2024, la joven **QUIÑONES PACHECO** y la señora **PACHECO ARROYO** presentaron su *Moción en Cumplimiento de Orden*.[5] En esencia, solicitaron que el relevo de la pensión alimentaria fuera prospectivo y expusieron que aún existía deuda ante la ASUME. Así las cosas, el 28 de febrero de 2024, el foro *a quo* prescribió *Resolución* declarando no ha lugar a la solicitud de relevo presentada por el señor **QUIÑONES VELÁZQUEZ**.[6]

Posteriormente, el 15 de marzo de 2024, el señor **QUIÑONES VELÁZQUEZ** presentó *Moción Urgente en Solicitud de Reconsideración*.[7] Alegó que, en este caso, la joven **QUIÑONES PACHECO** quedó emancipada por contraer matrimonio. Poco después, 26 de marzo de 2024, se dictaminó la *Resolución u Orden* apelada.

---

[2] Apéndice de la *Apelación Civil*, págs. 1-7.
[3] *Íd.*, págs. 8-10.
[4] *Íd.*, págs. 11-12.
[5] *Íd.*, págs. 13-19.
[6] Apéndice de la *Apelación Civil*, pág. 20.
[7] *Íd.*, págs. 21-22.

En desacuerdo, el 4 de abril de 2024, la señora **PACHECO ARROYO** y la joven **QUIÑONES PACHECO** presentaron *Moción Urgente en Solicitud de Reconsideración*.[8] Adujeron que, la pensión alimentaria no cesa automáticamente por la emancipación, sino al momento en que el tribunal expide su determinación. Finalmente, el 7 de mayo de 2024, se intimó la *Resolución* en la cual se mantuvo la decisión de 26 de marzo de 2024.[9]

Insatisfecha, la joven **QUIÑONES PACHECO** interpuso ante nos un escrito intitulado *Apelación Civil.* En la misma, señala el(los) siguiente(s) error(es):

> Erró el TPI al determinar que la efectividad del relevo de la pensión alimentaria en cuanto a la hija de las partes era a la fecha de emancipación por matrimonio habiendo acogido una reconsideración del apelado que debió declararse sin lugar al no contener el derecho aplicable en cuanto al relevo de la pensión alimentaria por emancipación que era la base para reconsiderar.

El 24 de mayo de 2024, pronunciamos *Resolución* en la cual, entre otras cosas, concedimos un plazo de treinta (30) días para presentar alegato(s) en oposición al recurso. Al día de hoy, habiendo transcurrido en exceso el término concedido, no ha comparecido el señor **QUIÑONES VELÁZQUEZ.**

Evaluado concienzudamente el expediente del caso; y contando con el beneficio de la comparecencia de la señora **PACHECO ARROYO** y la joven **QUIÑONES PACHECO**; nos encontramos en posición de resolver. Puntualizamos las normas de derecho pertinentes a las (s) controversia(s) planteada(s).

- II -

- A - *ALIMENTOS*

El deber de alimentar a los hijos es inherente a la paternidad y maternidad.[10] La base estatutaria de esta obligación la encontramos en la Constitución de Puerto Rico, pues emana del propio derecho a la vida

---

[8] Apéndice de la *Apelación Civil*, págs. 25- 27.
[9] *Íd.*, págs. 28.
[10] *De León Ramos v. Navarro Acevedo,* 195 DPR 157, 169 (2016).

consagrado en la Carta de Derechos.[11] Con este principio como referente, el Código Civil de Puerto Rico de 2020 instituye los lineamientos más generales de la obligación de alimentar a los hijos e hijas menores de edad, mientras que la *Ley Orgánica de la Administración para el Sustento de Menores* (*Ley de ASUME*) y las *Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico* (*Guías Mandatorias*) proveen los parámetros más específicos.[12]

Por alimentos se entiende todo lo que es indispensable para el sustento del(de la) menor, incluyendo la vivienda, la vestimenta, la recreación, y la asistencia médica de una persona, según la posición social de la familia.[13] Cuando el alimentista es menor de edad, los alimentos también comprenden la educación, las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social y los gastos extraordinarios para la atención de sus condiciones personales especiales.[14] Tratándose de un derecho que surge de la filiación, ambos progenitores están obligados a proveer alimentos.[15]

En ese sentido, el criterio rector al momento de fijar la cuantía de una *pensión alimentaria* es que esta sea proporcionada entre los recursos económicos del alimentante y las necesidades del alimentista.[16] Este precepto, conocido como *principio de proporcionalidad*, "exige que se establezca un balance entre los intereses del menor y la capacidad económica de aquellos responsables de costear esas necesidades".[17] El *principio de*

---

[11] Art. II, Sec. 7, Const. PR, LPRA, Tomo 1. *Toro Sotomayor v. Colón Cruz*, 176 DPR 582, 535 (2009).

[12] Ley Núm. 5- 1986, según enmendada por la Ley 178–2003, la Ley 182-2015 y la Ley 139-2020, 8 LPRA § 501 et seq. Reglamento Núm. 8529, según enmendado. El 15 de febrero de 2024, se aprobaron las *Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico*, Reglamento Núm. 9535.

[13] Art. 653 del Código Civil de Puerto Rico de 2020, 31 LPRA § 7531.

[14] *Íd.*

[15] Art. 558 del Código Civil de Puerto Rico de 2020, 31 LPRA § 7104.

[16] El Artículo 146 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. § 565, disponía que la "[l]a cuantía de los alimentos será proporcionada a los recursos del que los da y a las necesidades del que los recibe [...]". El Código Civil de Puerto Rico de 2020 mantiene un lenguaje similar en su Artículo 665 al disponer que: "[l]a cuantía de los alimentos debidos al mayor de edad debe ser proporcional a los recursos del alimentante y a las necesidades del alimentista". Respecto a la cuantía de los alimentos de los hijos menores de edad, el Código Civil vigente dispone que esta "se fija siguiendo los criterios dispuestos en la ley especial complementaria". Artículo 666 del Código Civil de Puerto Rico de 2020, 32 LPRA § 7562. Este estatuto especial complementario lo es la *Ley de ASUME, supra. Llorens Becerra v. Mora Monteserín*, 178 DPR 1003, 1016 (2010).

[17] *De León Ramos v. Navarro Acevedo, supra*, pág. 171.

*proporcionalidad* se integra tanto en la *Ley de ASUME* como en los procedimientos descritos en las *Guías Mandatorias*.[18] Corresponde al juzgador, en el ejercicio de su prudente arbitrio, velar por que la cuantía que se establezca cumpla con el *principio de proporcionalidad*.[19]

De otra parte, la *Ley de ASUME* ordenó la adopción de las *Guías Mandatorias* para uniformar y facilitar la determinación de pensiones alimentarias mediante la aplicación de criterios numéricos y descriptivos, siempre en función de los ingresos de los progenitores.[20]

### - B - *RELEVO DE LAS PENSIONES ALIMENTARIAS*

El Máximo Foro ha señalado que la obligación de proveer alimentos **no cesa automáticamente** por el mero hecho de que un menor haya cumplido veintiún (21) años.[21] Por ende, la emancipación por mayoría de edad no apareja *ipso facto* la pérdida del derecho a reclamar alimentos de los progenitores, pues siempre subsistirá la obligación que emana del Artículo 653 del Código Civil de Puerto Rico de 2020, que atiende las necesidades alimentarias de parientes.[22] De manera que, una vez fijada una pensión alimentaria, ni la emancipación ni la mayoría de edad de los hijos relevan al progenitor de su obligación de alimentarles si aquellos lo necesitaren.[23]

Respecto a las obligaciones de subsistencia luego de advenida la mayoridad, el Artículo 99 del nuevo Código Civil de 2020, dispone que:

> **Capítulo 425. La Mayoría de Edad**
>
> **§ 5593. Obligaciones de subsistencia**
> La mayoría de edad no extingue inmediatamente las obligaciones de subsistencia ni las atenciones de previsión de los progenitores o de otros obligados a prestarlas en favor de quien adviene a la mayoridad:
>
> > (a) Si la ley dispone expresamente su extensión;
> > (b) si el beneficiado está sujeto a la patria potestad prorrogada de sus progenitores; o

---

[18] *Íd.,* pág. 172.
[19] *Llorens Becerra v. Mora Monteserín, supra,* pág. 1016; *Guadalupe Viera v. Morell,* 115 DPR 4, 14 (1983).
[20] *Torres Rodríguez v. Carrasquillo Nieves,* 177 DPR 728, 762 (2009); *Santiago, Maisonet v. Maisonet Correa,* 187 DPR 550, 569 (2012).
[21] *James Soto v Montes James,* 213 DPR 718, 730 (2024); *Santiago, Maisonet v. Maisonet Correa, supra,* pág. 573; *Toro Sotomayor v. Colón Cruz,* 176 DPR 528 (2009); *Key Nieves v. Oyola Nieves,* 116 DPR 261, 266 (1985).
[22] 31 LPRA § 7531; *Santiago, Maisonet v. Maisonet Correa, supra,* pág. 573.
[23] *Rivera et al. v. Villafañe González,* 186 DPR 289, 293 (2012).

(c) si el beneficiado no tiene recursos ni medios propios para su manutención, mientras subsisten las circunstancias por las que es acreedor de ellas.

Las atenciones de previsión incluyen, sin limitarlas a, los seguros de salud, de vida y de incapacidad, los planes de estudio y las garantías prestadas sobre obligaciones que subsisten luego de advenir el beneficiado a la mayoridad.

La persona que alegue la extinción de las obligaciones de subsistencia o las atenciones de previsión sobre quien adviene a la mayoridad, debe probarla.

En *Argüello v. Argüello*, el Alto Foro señaló que, se ha instaurado que el deber del alimentante de proveer los medios necesarios para la educación de un hijo no termina, sin más, porque el hijo alcance la mayoría de edad.[24] "**Ni la emancipación** ni la mayoría de edad de los hijos relevan al padre de su obligación de alimentarles si aquellos lo necesitaren." En los casos en que el menor ha comenzado los estudios universitarios mientras es menor de edad, nuestra última instancia judicial ha determinado que bajo circunstancias normales:[25]

... al menos en cuanto a los estudios de bachillerato ... cuando un hijo "se ha iniciado en un oficio o carrera durante la minoridad, tiene derecho a exigir que el alimentante le provea los medios para terminarlo, aun después de haber llegado a la mayoridad".

En consonancia con lo anterior, la Máxima Curia expresó en *Santiago, Maisonet v. Maisonet Correa, supra*, que: "[.....] sin perder de perspectiva que la pensión alimentaria que se otorga a favor de un menor de edad responde a este hecho y, además, que la pensión que se adjudica conforme al Art. 143 del Código Civil, *supra*, se rige por criterios diferentes, sostenemos que la pensión alimentaria no cesa automáticamente al momento de cumplir la mayoridad. De ser lo contrario, se crearía una situación sumamente tortuosa para los jóvenes involucrados en esa acción. No podemos avalar que arbitrariamente un alimentante suspenda su obligación de pagar una pensión alimentaria por el hecho de que el alimentista advenga a la mayoría de edad".[26]

En resumen, se ha dilucidado *jurisprudencialmente* que:

---

[24] 155 DPR 62, 71 (2001).
[25] *Key Nieves v. Oyola Nieves, supra*, pág. 266. (énfasis nuestro).
[26] *Santiago, Maisonet v. Maisonet Correa, supra*, págs. 575- 576.

No obstante, prevalece la norma general que rige en estos asuntos: la obligación de proveer alimentos **no cesa automáticamente por el mero hecho de que el menor haya cumplido los veintiún (21) años**.

Por ello, **cuando un menor recipiente de una pensión alimenticia adviene la mayoría de edad, la obligación del alimentante no cesa hasta tanto un tribunal decrete un relevo de pensión**. Para ello, el alimentante debe informar al tribunal de su interés de ser relevado del pago de la pensión, por razón de que sus hijos están próximos a llegar a la mayoridad.[27]

### - C - *RETROACTIVIDAD EN LAS PENSIONES ALIMENTARIAS*

En lo concerniente a la retroactividad de las pensiones alimentarias, aunque la norma jurídica general implantada en Puerto Rico es que la reducción de pensiones alimentarias no es retroactiva.[28] Basándonos en ello, la **fecha de efectividad** de la rebaja decretada deberá ser precisamente la del día en que se emite el dictamen autorizando la misma. De existir circunstancias extraordinarias relacionada a la salud que justifiquen el retraso en la solicitud de rebaja, los tribunales pueden ordenar que la rebaja sea retroactiva a la fecha en que cambiaron las circunstancias del alimentante.[29] Asimismo, en *Rodríguez Rodríguez v. Vázquez Flores*, el Tribunal Supremo estableció que se justificaba la retroactividad de la rebaja de la pensión a la fecha de la solicitud por ser una pensión alimentaria menor al ingreso neto del alimentante.[30] Hizo alusión a la clara incapacidad que tenía el alimentante para pagar la pensión impuesta.

Implícitamente, el Tribunal Supremo ha implantado que para que la rebaja o reducción de una pensión alimentaria sea retroactiva a la fecha en que formalmente se solicitó, se tiene que presentar prueba que así lo

---

[27] *James Soto v Montes James*, *supra*, pág. 731. Véase *Santiago, Maisonet v. Maisonet Correa, supra,* pág. 576: [L]a pensión alimentaria **no cesa automáticamente** al momento en que el alimentista adviene a la mayoría de edad. Será deber del alimentante, si así lo desea, poner en conocimiento al tribunal de que sus hijos alimentistas están próximos a llegar a la mayoridad y su interés de ser relevado del pago de la pensión alimentaria. Es decir, la pensión otorgada a un menor de edad continuará en vigor –aunque advenga a la mayoría de edad– **hasta que no se realice el trámite procesal descrito anteriormente**. La referida moción se le deberá notificar al alimentista, de modo que éste pueda comparecer dentro de ese mismo pleito –a nombre propio– y establecer que sus necesidades permanecen vigentes y que reúne los requisitos que le hacen acreedor de la pensión a pesar de que ya es mayor de edad. (énfasis nuestro)

[28] *Rodríguez Rodríguez v. Vázquez Flores*, 113 DPR 377 (1982); *Valencia, Ex parte*, 116 DPR 909 (1986).

[29] *Valencia, Ex parte, supra*.

[30] 113 DPR 377 (1982).

justifique.[31] Cabe destacar también que, el foro primario en el uso de su discreción en aquellas "situaciones extraordinarias" en que el alimentante así lo demuestre, ya sea por una *enfermedad o un accidente incapacitante*, podrá hacer retroactiva la rebaja de pensión alimentaria a la fecha de su presentación ante el tribunal.[32]

- III -

En pocas palabras, la joven **QUIÑONES PACHECO** punteó que el tribunal *a quo* se equivocó o erró al determinar que la efectividad del relevo de la pensión alimentaria era a la fecha de emancipación por matrimonio habiendo acogido una reconsideración del señor **QUIÑONES VELÁZQUEZ** que debió declararse sin lugar, al no contener el derecho aplicable en cuanto al relevo de la pensión alimentaria por emancipación, que era la base para reconsiderar. Esto es, determinó que la efectividad del relevo de la pensión alimentaria cesó en noviembre 2023, al quedar emancipada por razón de su matrimonio.

Fundamentalmente, el caso ante nuestra consideración nos plantea la interrogante de si el relevo de una pensión alimentaria es efectivo desde la emancipación de la joven **QUIÑONES PACHECO** o desde el momento en que el señor **QUIÑONES VELÁZQUEZ** formalmente lo solicitó o desde que el tribunal pasó juico sobre la petición de relevo y lo declaró con lugar. Veamos.

Los hechos más importantes concernientes a la controversia ante nuestra consideración son: (i) El *9 de noviembre de 2023*, la joven **QUIÑONES PACHECO** contrajo nupcias; (ii) El *6 de febrero de 2024*, el señor **QUIÑONES VELÁZQUEZ** presentó *Moción Urgente Solicitando Relevo del Pago de Alimentos* que fuese notificada a la señora **PACHECO ARROYO** y la joven **QUIÑONES PACHECO** y, (iii) El *26 de marzo de 2024*, se dictaminó *Resolución u Orden* relevando al señor **QUIÑONES VELÁZQUEZ** de su obligación de pago

---

[31] *Valencia, Ex parte, supra; Rodríguez Rodríguez v. Vázquez Flores, supra*.
[32] *Rivera Maldonado v. Cabrera Olivera*, 130 DPR 39 (1992); *Magee v. Albarro*, 126 DPR 228, 234 (1990).

de la pensión alimentaria efectivo a la fecha de emancipación por razón de matrimonio y se le requirió efectuar el pago total de lo adeudado.

Al evaluar la totalidad del expediente y atemperar los hechos con el estado de derecho vigente en nuestro ordenamiento jurídico (pensiones alimentarias no cesan automáticamente, y para que el alimentante sea relevado del pago debe cumplir el trámite procesal): no cabe duda de que la obligación alimentaria del señor QUIÑONES VELÁZQUEZ en beneficio de la joven QUIÑONES PACHECO, su hija, debió cesar el **26 de marzo de 2024**, fecha en la cual se determinó relevarle del pago de la pensión alimentaria.[33] Esto quiere decir que la **fecha de efectividad** debe ser precisamente, la del día en que se emitió el dictamen autorizando el relevo. Ello, toda vez que, la obligación no cesa automáticamente por mayoridad o la emancipación por matrimonio. Entendemos que, en este caso, no existe situación extraordinaria alguna que amerite una determinación retroactiva.

- IV -

Por los fundamentos antes expuestos, *modificamos* la *Resolución u Orden* prescrita el 26 de marzo de 2024, a los fines de que el señor JAVIER QUIÑONES VELÁZQUEZ sea relevado de su obligación de alimentos efectivo a *26 de marzo de 2024*. Así modificada, *confirmamos* la *Resolución u Orden* pronunciada el 26 de marzo de 2024 por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, en todos sus demás extremos; y *devolvemos* el caso al foro primario para la continuación de los procedimientos de forma compatible con nuestros pronunciamientos.

**Notifíquese inmediatamente**.

Lo acordó el Tribunal, y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[33] Apéndice de la *Apelación Civil*, págs. 17- 19. Conforme al *Cuadre de Caso* fechado febrero de 2024, existe una deuda de pensión alimentaria ascendente a $3,749.68.