SONIA RIVERA MALDONADO, demandante y peticionaria, *v.* ALFREDO CABRERA OLIVERA, demandado y recurrido.

*Número:* CE-91-436 *Resuelto:* 2 de marzo de 1992

40

*Jorge E. Pérez Díaz, Procurador General, y Nilda Figueroa, Procuradora General Auxiliar,* abogados de la peticionaria; *María E. Medina Pérez,* abogada del recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

## I

" 'El ser humano, que viene a la vida con el destino que le señale su propia naturaleza, tiene un derecho a la existencia y al desarrollo de la misma según sus facultades; es decir, tiene un derecho absoluto a su conservación. En la organización actual de la familia y de la sociedad se halla impuesta, primero a los parientes y después al Estado, la obligación de proveer a dicha necesidad; y cada uno en su caso está en el deber de procurar al que por sí no podría cumplir dicho fin, los medios necesarios para su conservación y desarrollo: deber altamente social, que no depende de la voluntad del que le tiene, sino que se impone a todos como una de las condiciones necesarias de la vida progresiva de la humanidad.' [Citando a Arrazola, ] Manresa, *Comentarios al Código Civil Español,* Madrid, Ed. Reus, 1956, Vol. I, págs. 782–783." *Milán Rodríguez v. Muñoz,* 110 D.P.R. 610, 613–614 (1981).

El 30 de noviembre de 1984 el Tribunal Superior, Sala de Aibonito, decretó el divorcio de Sonia Rivera Maldonado y de Alfredo Cabrera Olivera. Concedió a ambos la patria potestad del único niño menor procreado en el matrimonio y a ella la custodia. Se le impuso a Cabrera Olivera una pensión alimentaria semanal de $20. Cabrera Olivera no cumplió a cabalidad. Oportunamente, Rivera Maldonado acudió al tribunal. Por razón de residencia, el asunto se trasladó a la Sala de Bayamón, donde se inició el trámite

de desacato. Cabrera Olivera adeudaba $5,390. Aunque fue citado, no compareció. Previa vista, el tribunal (Hon. Ramón A. Buitrago Iglesias, Juez) lo halló incurso en desacato civil, le acreditó $750 pagados esporádicamente y ordenó su arresto e ingreso a una institución carcelaria hasta que satisficiera el balance. En sus pronunciamientos, dicho foro hizo la salvedad de que en "algún momento podrá acreditar, lo que no hace en este momento por desconocerlo, cualquier término que el demandado hubiese estado en prisión por razón involuntaria, pero por lo pronto, por la propia incomparecencia del demandado no está en condición de hacerlo". Anejo III, pág. 6.

El 6 de julio Cabrera Olivera compareció personalmente e informó haber recaudado $900 entre sus familiares. Solicitó su excarcelación y permiso para abonar la suma de $10 semanales a la deuda alimentaria, en adición a la pensión vigente. Luego de una vista, el tribunal accedió. Como única variante dispuso que el abono fuera $20 semanales. Requirió memoriales de derecho en torno a si procedía un crédito al pago de la pensión alimentaria por el tiempo en que Cabrera Olivera estuvo en prisión, a saber, desde el 25 de febrero de 1985 al 22 de diciembre de 1987.[1]

El foro de instancia favoreció a Cabrera Olivera. Aun

---

[1] Ambas partes presentaron sus escritos. La Procuradora Especial de Relaciones de Familia, representante legal de Rivera Maldonado, se opuso a la concesión de cualquier crédito. Adujo que era injusto premiar a Cabrera Olivera cuando la conducta que condujo a su encarcelamiento fue un acto voluntario e intencional de agresión perpetrado contra Rivera Maldonado. Respecto a la deuda alimentaria más reciente, sostuvo que a tenor con la doctrina pautada en *Quiñones v. Jiménez Conde*, 117 D.P.R. 1 (1986), era improcedente exonerarlo por ser él quien tomó la decisión de desacatar las órdenes del tribunal; indicó que ello penalizaría a la parte inocente y fomentaría los incumplimientos de pensión.

Cabrera Olivera argumentó que el motivo por el cual ingresó al presidio era distinguible del acaecido en el caso de *Quiñones v. Jiménez Conde*, supra, toda vez que aunque agredió a su ex cónyuge, no quiso desacatar las órdenes del tribunal dejando de pagar la pensión. Esbozó que mientras estuvo encarcelado no devengó ingresos. El ordenar su arresto por tal deuda iría en detrimento del menor, ya que ni él ni sus familiares tenían medios de fortuna para satisfacerla. Alegó que desde principios de 1988 pasaba $100 mensuales a la madre como pago de pensión alimentaria.

cuando determinó que su encarcelación fue por una *conducta voluntaria de agresión* contra su ex cónyuge Rivera Maldonado, ello no desvirtuaba el hecho de que la *reclusión* por dicho delito fue de naturaleza involuntaria. Bajo ese interesante razonamiento, dicho foro concluyó que Cabrera Olivera "no tenía en sus manos la llave del penal para poder salir o cumplir con su obligación alimenticia, por lo que el presente [era] un caso distinguible de la norma [de autoe]ncarcelación señalado en [*Quiñones v. Jiménez Conde*], 117 D.P.R. 1 (1986)".([2]) Anejo I, pág. 1.

A solicitud de la Procuradora Especial de Relaciones de Familia, mediante el trámite de mostrar causa, revisamos.

## II

 Es prolífera nuestra jurisprudencia en el campo del derecho de familia sobre las normas a regir en materia de rebajas de pensiones alimentarias. En *Valencia, Ex parte*, 116 D.P.R. 909, 914 (1986), expresamos que la fecha de efectividad de una rebaja decretada debía ser la del dictamen que la autoriza; empero, el tribunal de instancia podía ordenar, en circunstancias que así lo justificaran, que se retrotrayera a la fecha de la presentación de la moción de reducción. Cautelarmente indicamos: "Intervenir 'a posteriori' con pensiones alimenticias ya 'devengadas' con que esa madre contaba para poder cumplir con los compromisos contraídos —en relación con los cuales ni tan siquiera ha tenido el 'aviso' de una solicitud de rebaja— cau-

---

([2]) Allí también el alimentante-peticionario planteó que debía eximírsele. Al rechazar dicho planteamiento, expresamos:

"En primer lugar, el peticionario se encuentra privado de su libertad debido a la decisión que voluntariamente tomó al desacatar las órdenes del tribunal; esto es, su encarcelación ha sido autoinfligida. En segundo lugar, dicha exoneración representaría penalizar a la parte inocente del incumplimiento por el hecho de haber reclamado aquello a lo que en justicia tiene derecho. En tercer lugar, somos de la opinión que el así hacerlo tendría el efecto indeseable de fomentar el incumplimiento." *Quiñones v. Jiménez Conde*, supra, pág. 9.

saría una desastrosa e inaceptable inestabilidad en esos hogares que no debe ser permitida." Íd., pág. 916. Debido a que ello fomentaría aún más los atrasos en el pago de las pensiones alimentarias, advertimos que los foros de instancia deberían "de abstenerse de intervenir con el monto de las pensiones alimenticias devengadas con anterioridad a la fecha de radicación de las solicitudes de rebaja de pensión alimenticia, excepto en aquellas *situaciones extraordinarias* en que el alimentista pueda demostrar —en adición a la procedencia de la rebaja propiamente— que por razón de una enfermedad o accidente de índole incapacitante estuvo realmente imposibilitado de radicar a tiempo la moción de rebaja correspondiente". (Énfasis en el original y escolio omitido.) Íd., págs. 916–917.

■ Esta normativa fue reiterada subsiguientemente y rige al presente. *Magee v. Alberro*, 126 D.P.R. 228 (1990); *López v. Rodríguez*, 121 D.P.R. 23 (1988); *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61 (1987). El Art. 19 de la Ley Especial de Sustento de Menores, según enmendada, 8 L.P.R.A. sec. 519, recoge en parte esta casuística.

## III

■ El dictamen del ilustrado foro de instancia no procede. No estamos ante una solicitud de rebaja con efecto retroactivo, sino ante una solicitud para *eliminar* en su *totalidad* la pensión alimentaria devengada y adeudada durante la reclusión carcelaria del alimentante. La petición de Cabrera Olivera fue hecha dos (2) años y siete (7) meses después de haber sido puesto en libertad y luego de que el tribunal de instancia, motu proprio, trajera a colación la posibilidad de otorgarle dicho "crédito". Ello atenta contra la norma de que las partes, en casos de familia, deben ser judicialmente diligentes y comparecer ante los tribunales a informar cualquier cambio acaecido. *Valencia, Ex parte*, supra, pág. 915.

 El foro de instancia trastocó el ordenamiento y la casuística vigente. Inintencionalmente su dictamen fue en detrimento del bienestar y de los mejores intereses del menor procreado en el matrimonio; amén de que el alimentante incurrió en conducta delictiva que culminó en su encarcelación. De prevalecer ese razonamiento judicial, a corto y a largo plazo, los menores resultarían ser las víctimas perjudicadas y desprovistas de su derecho a ser alimentados. Obsérvese que, en materia de obligaciones generales, nuestro ordenamiento no considera eximente la reclusión en una institución penal. Igual enfoque procede, con mayor justificación, ante obligaciones alimentarias revestidas de un alto interés público y que forman parte del poder de *parens patriae* del Estado. *Robles v. Otero de Ramos*, 128 D.P.R. 911 (1991); *Piñeiro Crespo v. Gordillo Gil*, 122 D.P.R. 246 (1988); *López v. Rodríguez*, supra; *Rodríguez Avilés v. Rodríguez Beruff*, 117 D.P.R. 616 (1986); *Quiñones v. Jiménez Conde*, supra; *Milán Rodríguez v. Muñoz*, 110 D.P.R. 610 (1981); *Sosa Rodríguez v. Rivas Sariego*, 105 D.P.R. 518 (1976).(³)

 Por último, cabe señalar el efecto disuasivo (*chilling effect*) sobre las víctimas de un acto de violencia doméstica que tiene la resolución que nos ocupa. Además, contraviene la política pública que inspiró la reciente legislación sobre violencia doméstica. 8 L.P.R.A. sec. 601 *et seq.* Sitúa a la víctima ante una encrucijada injusta: si denuncia a su ex cónyuge-agresor y ello culmina en su encarcelamiento, la deuda alimentaria acumulada durante el en-

---

(³) El foro de instancia pudo haberle aprobado un plan de pago razonable que le permitiera abonar a la deuda acumulada y devengada y, además, cumplir con su obligación regular alimentaria. Ello hubiera ido a tono con la oferta que hiciera el padre demandado y que culminó en el acuerdo previamente mencionado y aprobado por el tribunal.

La oferta voluntaria de Cabrera Olivera descarta su expresión en la Planilla de Información Personal y Económica (P.I.P.E.) de que carecía de fuente de ingresos. Tomamos conocimiento judicial de la economía subterránea existente en nuestro país.

carcelamiento del alimentante eventualmente le será "acreditada". Se premia así indirectamente al agresor, a costa de que la víctima y sus hijos (alimentistas) se vean privados de la pensión que en derecho y en justicia les corresponde.

Por los fundamentos expuestos, *se dictará sentencia revocatoria.*

Los Jueces Asociados Señores Hernández Denton y Alonso Alonso concurren con el resultado sin opinión escrita.