# 2008 DTA 103

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE AIBONITO
PANEL VIII**

MILDRED RODRÍGUEZ POMALES
Demandante-Apelante

v.

LUIS ANTONIO SANTIAGO SOTO
Demandado-Apelado

Núm. KLAN-07-01353

San Juan, Puerto Rico, a 18 de agosto de 2008

Panel integrado por su Presidente, el Juez Martínez Torres,
la Juez Cotto Vives y el Juez Miranda De Hostos

Martínez Torres, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La Sra. Mildred Rodríguez Pomales acude ante nos para solicitar que revoquemos una resolución emitida por el Tribunal de Primera Instancia, Sala de Aibonito, el 25 de mayo de 2007. En la referida resolución, el tribunal a *quo* aprobó el informe rendido por la Examinadora de Pensiones Alimentarias y, en consecuencia, modificó la pensión alimentaria a la cantidad de $609.77 mensual, efectivo al 1ro de mayo de 2007. Indicó que de dicha cantidad, el alimentante aportaría $405.77 mensuales a través de la Administración para el Sustento de Menores (ASUME), y la Administración del Seguro Social pagaría directamente al menor la cantidad de $204 mensuales. A su vez, dicho foro ordenó a ASUME establecer que no existe balance adeudado, al 30 de abril de 2007.

Por los fundamentos que a continuación expondremos, confirmamos el dictamen apelado.

## I

Como parte de una sentencia de divorcio emitida el 13 de septiembre de 1999, el TPI fijó una pensión estipulada de $1,300 en beneficio del hijo menor de edad procreado entre las partes. El 17 de septiembre de 2002, la Sra. Rodríguez Pomales presentó una moción de desacato y aumento de pensión alimentaria, en la que alegó atrasos en el pago de la pensión alimentaria ascendentes a $3,900. Adujo que la pensión se había estipulado a base de una información de ingresos provenientes de la renta de un taller de hojalatería y pintura que resultaron ser menores a los que el demandado–apelado informó en una petición de quiebras presentada en diciembre de 2001. La solicitud de aumento de pensión fue referida a la Examinadora de Pensiones Alimentarias. En atención a ello, el 24 de septiembre de 2002, el tribunal *a quo* emitió una resolución y orden en la que ordenó al demandado-apelado depositar la cantidad adeudada dentro del término de 20 días so pena de declararlo incurso en desacato y ordenar su arresto.

· El 11 de febrero de 2003, el Sr. Santiago Soto presentó por derecho propio una moción para informar que se le había hecho difícil cumplir con el pago de su obligación debido a que tuvo que desahuciar a los inquilinos del taller de mecánica **[1]** porque éstos no pagaban la renta. Alegó, además, que el taller permanecía cerrado y no tenía trabajo fijo. El tribunal dispuso que dicha solicitud sería atendida, junto con la solicitud de desacato de la parte demandante-apelante, en la vista pautada para el 21 de mayo de 2003. Posteriormente, la Sra. Rodríguez Pomales desistió de su solicitud de desacato, por lo que la vista fue suspendida.

Luego de un extenso trámite procesal relacionado con el descubrimiento de prueba, la Sra. Rodríguez Pomales presentó una moción para solicitar una orden provisional para que se le prohibiera al demandado-apelado enajenar el inmueble utilizado como taller de hojalatería. Indicó que tenía temor fundado y razones para creer que el Sr. Santiago Soto se proponía vender el inmueble de su propiedad. Añadió que, al constituir dicha renta la única fuente de ingreso del alimentante, la pensión e interés del hijo alimentista menor de edad corría grave peligro. Por su parte, el demandado-apelado solicitó que se le impusiera una pensión alimentaria provisional de $400 mensuales ante la solicitud de suspensión de la vista de revisión de pensión solicitada por la parte demandante-apelante y hasta que se rindiera un informe en el caso por parte de la Examinadora. Ambas solicitudes fueron declaradas no ha lugar por el TPI.

Posteriormente, las partes presentaron varias mociones relacionadas con el descubrimiento de prueba, entre éstas, una presentada por la Sra. Rodríguez Pomales para solicitar al tribunal que ordenara la congelación de los fondos que el demandado-apelado tenía depositados en la Cooperativa de Ahorro y Crédito Cristóbal Rodríguez Hidalgo. El tribunal *a quo* se negó a conceder los remedios solicitados por la parte demandante-apelante.

Durante una vista de seguimiento celebrada el 15 de marzo de 2004 —y a solicitud de la parte demandada-apelada—, el TPI refirió el caso a la Examinadora de Pensiones Alimentarias con el fin de evaluar la capacidad económica del alimentante y determinar si procedía la modificación de la pensión alimentaria vigente. Durante el mes de abril, el TPI emitió varias órdenes de descubrimiento de prueba a terceros, a petición de la parte demandante-apelante, quien alegó que, de acuerdo con la planilla informativa sometida por Santiago Soto, la situación financiera de éste había variado de manera súbita y sorpresiva.

Luego de varias suspensiones, las vistas sobre revisión de pensión alimentaria se celebraron los días 1ro de junio de 2005, 14 de septiembre de 2005, 5 de diciembre de 2005 y el 24 de enero de 2006. Durante éstas, se presentó vasta prueba documental, incluyendo las Planillas de Información Personal y Económica (PIPE) de las partes. La prueba testifical de la parte demandada-apelada consistió —además de su propio testimonio— del testimonio del Sr. Joel Dedós Colón, compañero sentimental de la demandante-apelante; del Sr. Luis F. Oyola, auditor interno de la compañía Gatsby; y de la Sra. Ivonne Collazo, Directora de Recursos Humanos de la Universidad Interamericana de Ponce. La parte demandante-apelante, por su parte, contó con el testimonio del Sr. Luis Antonio Cruzado de Jesús, Ajustador de la Cooperativa de Ahorro y Crédito Cristóbal Rodríguez Hildalgo en Coamo.

El 6 de febrero de 2006, la parte demandante-apelante presentó una solicitud de supresión de una evidencia documental admitida en una vista celebrada el 24 de enero de 2006. La referida evidencia consistía en una carta escrita por el hijo de las partes, la cual incidía sobre la controversia de si el Sr. Joel Dedós Colón, compañero sentimental de la Sra. Rodríguez Pomales, convivía con ésta en la casa donde reside el menor. El demandado-apelado se opuso a la solicitud de supresión de evidencia.

En ocasión de una vista celebrada el 11 de abril de 2006, se estableció, mediante certificación de ASUME, que el demandado-apelado adeudaba una cantidad de $9,700. A esta cantidad se le restó lo pagado por el demandado-apelado a través del Seguro Social ($800) para un total de $8,900. Ante esta situación, el TPI le fijó al demandado-apelado un plan de pago provisional de $370.83 y mantuvo vigente la pensión alimentaria de $1,300 hasta que el tribunal dispusiera otra cosa. El Sr. Santiago Soto solicitó la rebaja provisional de la pensión alimentaria en lo que se recibía y atendía el informe de la Examinadora. Alegó que se le hacía difícil pagar los $1,300 mensuales y que el proceso de revisión de la pensión se había atrasado por causas no imputables a él.

Posteriormente, el demandado-apelado alegó por escrito que los pagos informados en la vista del 11 de abril de 2006 eran incorrectos y que la deuda real ascendía a $5,800. Por tanto, solicitó una reestructuración del plan de pago a una cantidad menor.

El 23 de octubre de 2006, la parte demandante-apelante solicitó al tribunal que declarara al demandado-apelado Santiago Soto incurso en desacato debido a que éste estaba incumpliendo tanto con el pago de la pensión alimentaria, efectiva desde el 27 de enero de 1999, así como con el plan de pago ordenado por el tribunal, el 11 de abril de 2006.

El 6 de noviembre de 2006, el TPI denegó la solicitud de supresión de la evidencia presentada por la demandante-apelante y, por consiguiente, refirió el caso a la Examinadora para que ésta determinara si procedía o no una rebaja de la pensión alimentaria, recomendara si se le debía dar algún efecto retroactivo a la misma y preparara el informe correspondiente. El foro *a quo* aprovechó para aclarar que la solicitud de rebaja de pensión del demandado-apelado se entendió realmente presentada el 15 de marzo de 2004 —cuando éste hizo el requerimiento de manera verbal en sala abierta— y no el 11 de febrero de 2003, como se alegó. Como fundamento para ello, señaló que cuando la demandante-apelante desistió de su solicitud de aumento de pensión y pidió que se dejara sin efecto la vista, el TPI omitió considerar que la referida vista no era solamente para atender dicha petición, sino, también, la solicitud del demandado-apelado. Añadió que tal situación indujo a error al tribunal al dejar sin efecto la vista sin disponer de los planteamientos del Sr. Santiago Soto. En revisión judicial, otra Curia de este Tribunal denegó el recurso de *certiorari* presentado por la parte demandante-apelante, por ser prematuro, debido a que a esa fecha la Examinadora aún no había rendido su informe, ni había determinado si el alegado error evidenciario era fundamental a la decisión del caso. El 10 de mayo de 2007, la Examinadora rindió el informe correspondiente.

Así pues, el 25 de mayo de 2007, el TPI emitió el dictamen apelado en el que aprobó el informe rendido por la Examinadora y, en consecuencia, modificó la pensión alimentaria a la cantidad de $609.77 mensual, efectivo al 1ro de mayo de 2007. Indicó que de dicha cantidad, el alimentante aportaría $405.77 mensuales a través de ASUME y la Administración del Seguro Social pagaría directamente al menor la cantidad de $204 mensuales. A su vez, dicho foro ordenó a la Administración para el Sustento de Menores (ASUME), establecer que no existe balance adeudado al 30 de abril de 2007.

Inconforme, la Sra. Rodríguez Pomales acude ante nos mediante el presente recurso en el que alega que erró el TPI al reducir la pensión alimentaria estipulada, y al eliminar la deuda alimentaria de $15,330.

Con los alegatos de las partes y la transcripción de la vista ante la Oficial Examinadora, resolvemos.

## II

La obligación de los progenitores de brindar alimentos a sus hijos menores de edad, no emancipados, es parte esencial del derecho a la vida consagrado en las Secciones 1 y 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico. *McConnell Jiménez v. Palau Grajales,* 161 D.P.R. 734 (2004); *Martínez Vázquez v. Rodríguez Laureano,* 160 D.P.R. 45 (2003). Esta obligación halla su base en principios universalmente reconocidos de solidaridad humana asociadas al derecho natural e imperativo de los vínculos familiares. *Maldonado v. Cruz Arce*, 161 D.P.R. 1 (2004); *Argüello v. Argüello*, 155 D.P.R. 62 (2001).

Se entiende por alimentos todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia. Los alimentos comprenden también la educación e instrucción del alimentista, cuando es menor de edad. Art. 142 del Código Civil, 31 L.P.R.A. sec. 561. Los alimentos incluyen todo aquello que sea indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia. *McConnell Jiménez v. Palau Grajales, supra*; *Chévere v. Levis*, 152 D.P.R. 492 (2000). También comprenden la educación del alimentista. *Argüello v. Argüello, supra*, a la pág. 91; *Key Nieves v. Oyola Nieves*, 116 D.P.R. 261, 266 (1985).

La cuantía de los alimentos será proporcionada a los recursos del que los da y a las necesidades del que los recibe, y se reducirán o aumentarán en proporción a los recursos del primero y a las necesidades del segundo. Art. 146 del Código Civil, *supra,* sec. 565. Véase, además, *Chévere v. Levis*; *supra, Rodríguez Avilés v. Rodríguez Beruff, supra*, a la pág. 621. El Artículo 153 del Código Civil, *íd.*, sec. 601, en este sentido, impone la obligación a los padres de alimentar a sus hijos menores no emancipados *"con arreglo a su fortuna"*. *Vega v. Vega*, 85 D.P.R. 675, 679 (1962).

Están obligados recíprocamente a darse alimentos en toda la extensión que señala el Artículo 142 del Código Civil, *íd.*, sec. 561: (1) los cónyuges, (2) los ascendientes y descendientes, (3) el adoptante y el adoptado y sus descendientes. Art. 143 del Código Civil, *íd.*, sec. 562. La obligación del sustento de los hijos menores recae en ambos padres. Sin embargo, una vez roto el vínculo matrimonial, se reparte entre los padres el pago de la pensión alimentaria en cantidad proporcionada a su caudal respectivo. Art. 145 del Código Civil, *íd.*, sec. 564. Véase, además, *Figueroa Robledo v. Rivera Rosa*, 149 D.P.R. 565, 572 (1999).

En Puerto Rico, los casos de menores están revestidos del más alto interés público. *Maldonado v. Cruz Dávila, supra.* Dicho interés no es otro que el bienestar del menor. *Ríos Rosario v. Vidal Ramos*, 134 D.P.R. 3 (1993). Por tal razón, el Estado ha procurado que este interés esté ampliamente protegido mediante la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada por la Ley Núm. 86 de 17 de agosto de 1994, conocida como *"La Ley Orgánica de la Administración para el Sustento de Menores"*, (en adelante Ley para el Sustento de Menores), 8 L.P.R.A. sec. 501 *et seq.*

La Ley para el Sustento de Menores consagra la política pública del Estado de crear un procedimiento expedito que permita procurar de los padres, o personas legalmente responsables, que contribuyan a la manutención y bienestar de sus hijos o dependientes mediante la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de pensiones alimentarias. *McConnell Jiménez v. Palau Grajales, supra*; *Martínez Vázquez v. Rodríguez Laureano, supra.*

Este propósito se logra mediante el nombramiento de examinadores, quienes, luego de evaluar la información pertinente y escuchar la evidencia sobre las partes, formulan recomendaciones sobre las pensiones que pueden ser acogidas o rechazadas por el tribunal. La mencionada ley hace mandatorio que la fijación de la pensión sea realizada considerando las Guías para la Determinación y Modificación de Pensiones Alimentarias. Art. 19 de la Ley de Sustento de Menores, 8 L.P.R.A. sec. 518; Reglamento Núm. 7135 de 21 de abril de 2006.

Ahora bien, el Tribunal Supremo ha dispuesto que la determinación de la cuantía de los alimentos corresponde al prudente arbitrio de los tribunales. Para ello, debe tenerse en cuenta que haya proporción entre el estado de necesidad del alimentista y la posibilidad económica del alimentante, considerando los medios de que éste disponga luego de atender su propio sostenimiento. Art. 146 del Código Civil, *supra,* sec. 565. Véase, además, *Chévere v. Levis,* 150 D.P.R. 550 (2000); *Guadalupe Viera v. Morell,* 115 D.P.R. 4 (1983). Este carácter de proporcionalidad es igualmente observado por el Art. 19 de la Ley de Sustento de Menores, *supra.*

Para la fijación de una pensión alimentaria, se considerarán, entre otros, los siguientes factores:

*"(1) Los recursos económicos de los padres y del menor;*

*(2) la salud física y emocional del menor, y sus necesidades y aptitudes educacionales o vocacionales;*

*(3) el nivel de vida que hubiera disfrutado el menor si la familia hubiera permanecido intacta;*

*(4) las consecuencias contributivas para las partes, cuando ello sea práctico y pertinente, y*

*(5) las contribuciones no monetarias de cada padre al cuidado y bienestar del menor. Art. 19 de la Ley de Sustento de Menores, supra."*

Hay que mencionar que dicho criterio de proporcionalidad se observará también al momento de reducir o aumentar la cuantía de la pensión. *Martínez Vázquez v. Rodríguez Laureano, supra; Guadalupe Viera v. Morell, supra.* Para la determinación de los recursos económicos del obligado a pagar una pensión alimentaria, se tomarán en consideración, además del ingreso neto ordinario, el capital o patrimonio total del alimentante.

Luego de analizar la norma jurídica aplicable, procedemos a resolver la controversia.

### III

El primer señalamiento de error va dirigido a impugnar la apreciación efectuada por el TPI sobre la prueba desfilada en el juicio. La parte apelante alega que erró el tribunal al reducir la pensión alimentaria estipulada aunque, a juicio de dicha parte, no se demostró disminución real de capacidad económica del alimentante o de las necesidades del alimentista. Argumenta que el tribunal *a quo* se negó a determinar la verdadera capacidad económica del alimentante al omitir evaluar la prueba documental admitida en evidencia y considerar extensa evidencia circunstancial tendente a demostrar la solvencia del alimentante, su capacidad de generar ingresos sustanciales y su esquema deliberado de desvanecer bienes que le generaban ingreso y dejar de trabajar sin evidencia de incapacidad de naturaleza alguna con el único propósito deliberado de evadir su obligación de alimentar a su hijo.

Como regla general, y ante la ausencia de otras herramientas para evaluar si el TPI erró en su apreciación de la prueba, tenemos que ampararnos en la doctrina ampliamente establecida sobre la deferencia judicial en la etapa apelativa a la apreciación de la prueba oral que hizo el juzgador de instancia. La norma jurídica reconocida en nuestro sistema de derecho procesal establece que la apreciación de la prueba realizada por el tribunal sentenciador y la credibilidad que dicho foro otorgue a la prueba debe ser objeto de gran deferencia por los tribunales apelativos, los cuales, en ausencia de circunstancias extraordinarias o que demuestren que el tribunal apelado actuó movido por la pasión, el prejuicio, la parcialidad, o error manifiesto, no deben intervenir con las determinaciones de hechos de este último. *Trinidad García v. Chade,* 153 D.P.R. 280, 291-292 (2001); *López Vicil v. ITT Intermedia, Inc.,* 142 D.P.R. 857 (1997).

Cuando existe conflicto de prueba, corresponde precisamente al juzgador de los hechos dirimirlo, particularmente cuando están en cuestión elementos altamente subjetivos. El juzgador de hechos, quién oyó y

vio declarar a los testigos y apreció su *"demeanor"*, es quien indudablemente está en mejor posición para aquilatar la prueba testifical. Los tribunales apelativos no deben intervenir con las determinaciones de hechos del tribunal de instancia, salvo que tales determinaciones produzcan insatisfacción de conciencia y estremezcan el sentido de justicia del foro apelativo. *Flores v. Soc. de Gananciales*, 146 D.P.R. 45, 49 (1998).

Más aún, dispone la Regla 43.2 de las de Procedimiento Civil de Puerto Rico, 32 L.P.R.A., Ap. III, R. 43.2, en lo pertinente, que *"[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el Tribunal Sentenciador para juzgar la credibilidad de los testigos"*.

En este caso, la Examinadora, luego de escuchar el testimonio del demandado-apelado, determinó como un hecho probado que éste *"alquiló el taller de hojalatería, por espacio de 5 años, para el año 2000, porque estaba cansado de trabajar. Tenía 55 años de edad y llevaba 48 años, y el alquiler del taller, $3,500.00 mensual le permitía cubrir sus deudas."* Determinación de hecho núm. 1.12, a la página 336 del apéndice del recurso. El foro *a quo* determinó, a su vez, que no existe evidencia en el récord que demuestre que el Sr. Santiago Soto vendió el taller de hojalatería y pintura para evadir su obligación alimentaria. Determinación de hecho núm. 1.15, página 336, del apéndice del recurso. En cuanto a este punto, de la transcripción de la prueba oral, surge que la razón para que el demandado-apelado vendiera el taller fue que estaba *"embrollao"* y necesitaba el dinero para poder pagar las cuentas. Transcripción de la prueba oral (T.P.O.), páginas 72-73 y 78-79.

Por otro lado, dicho foro también determinó que el demandado *"no estableció, [a satisfacción del Tribunal], la razón clara por la cual de un ingreso de $1,000.00 mensual, informado en la planilla de información personal y económica del 22 de febrero de 2005, al 2006 sólo tenía un ingreso de $250.00 mensual haciendo "chiripas", lavando, brillando carros y en hojalatería. No presentó evidencia que demuestre que la operación quirúrgica que sufrió a consecuencia de una hernia que lo aquejaba le impida trabajar."* Determinación de hecho núm. 1.18, a la página 338 del recurso. Fue a base de dicho testimonio que el tribunal concluyó que el Sr. Santiago Soto estaba capacitado para trabajar, por lo cual le imputó el ingreso que éste informó en su planilla de información personal y económica del 2005 de $1,250 mensuales ($1,000 mensual como hojalatero y $250 mensual de la renta de una propiedad). El ingreso total determinado fue de $1,545 mensuales, incluyendo los beneficios del Seguro Social.

De otra parte, a base del testimonio vertido por el Sr. Dedós Colón, el TPI determinó que el testigo es el compañero consensual de la demandante-apelante Rodríguez Pomales y convive con ésta bajo el mismo techo en la Urbanización La Arboleda en Coamo. Determinación de hecho núm. 2.4, página 339 del apéndice del recurso. Tal determinación fue corroborada mediante el Exhibit 19 de la parte demandada-apelada, en el cual el menor alimentista reconoció que el Sr. Dedós Colón convive con su madre en la casa de ellos. Determinación de hecho núm. 5.10, página 348 del apéndice del recurso.

Del expediente ante nos surge que el tribunal *a quo* le creyó al Sr. Santiago Soto que alquiló su taller durante cinco años porque estaba cansado de trabajar y que, posteriormente, lo vendió porque necesitaba dinero para pagar sus deudas. El testimonio que ofreció el demandado-apelado no fue imposible, increíble, ni irrazonable.

El TPI, por el contrario, no estuvo satisfecho con lo declarado por el demandado-apelado en cuanto a que la operación quirúrgica que sufrió a consecuencia de una hernia, le impedía trabajar. Debido a ello, le imputó a éste el salario reportado en la PIPE del 2005 de $1,000 mensuales.

Dado todo lo anterior, no encontramos que el tribunal *a quo* haya errado en su apreciación de la prueba. Dicho tribunal fue el que tuvo la oportunidad de escuchar a los testigos declarar, el que pudo apreciar su

comportamiento en sala, el que aquilató la documentación ofrecida y quien adjudicó credibilidad.

Una vez aquilatada la totalidad de la prueba testifical y documental presentada, el TPI concluyó que *"en el presente caso no se estableció que el...[demandado-apelado] abandonó su empleo, o su fuente de ingresos como una medida para no cumplir con su obligación alimentaria. La [demandante-apelante] tampoco estableció los ingresos actuales del...[demandado-apelado]. Procede imputarle al...[demandado-apelado] el ingreso que declaró en su planilla de información personal y económica del 2005, $1,000 mensual. Con los beneficios de la Administración del Seguro Social ($295.00 mensual) y la renta de la casa de su propiedad ($250.00 mensual) se establecen los ingresos del ...[demandado-apelado] en $1,545.00 mensual."* Página 358 del apéndice del recurso.

Es menester enfatizar que las determinaciones de pensiones alimentarias, ya sea en virtud de lo dispuesto por las Guías Mandatorias, *supra,* o por la determinación que haga el juzgador de los hechos —luego de una evaluación desapasionada de la prueba—, gozan de una presunción de corrección. Esa presunción se basa en la necesidad de mantener cierta estabilidad en la vida de los menores que se intentan proteger. La parte demandante-apelante no ha logrado rebatir esa presunción de corrección.

Luego de analizar el expediente y la transcripción de la prueba oral, estamos convencidos de que las determinaciones de hechos formuladas por el TPI están sostenidas por la evidencia presentada durante las vistas. No existen indicios de que la decisión del referido foro se deba a pasión, prejuicio o parcialidad. Bajo tales circunstancias, no procede alterarla en apelación. Por lo tanto, a la luz de la normativa esbozada, tenemos que concluir que es menester no intervenir con las determinaciones de hechos, la apreciación de la prueba y la adjudicación de credibilidad del testimonio de los testigos efectuadas por el juzgador. Siendo así, concluimos que el primer error señalado no fue cometido.

## IV

En su segundo señalamiento de error, la demandante-apelante alega que incidió el TPI al determinar eliminar una deuda alimentaria de $15,330. Alega que tal proceder es indebido, porque hizo retroactiva una rebaja de pensión alimentaria. Argumenta que resulta en un completo detrimento para los mejores intereses del menor, así como un precedente nefasto, el que se determine que la fecha de efectividad de la pensión es retroactiva a la fecha de la solicitud de la misma.

El Artículo 19 de la Ley para el Sustento de Menores, *supra,* sec. 518, establece que, luego de establecida la cuantía de la pensión alimentaria, ésta podrá revisarse y modificarse luego de transcurridos tres años desde la fecha en que la orden fue establecida o modificada por última vez. No obstante, el aludido artículo le confiere a los tribunales la facultad para iniciar dicho procedimiento en cualquier momento y fuera del ciclo de tres años, cuando entienda que existe justa causa para así hacerlo, tal como variaciones o cambios significativos o imprevistos en los ingresos, capacidad de generar ingresos, egresos, gastos o capital del alimentante o alimentista, o en los gastos, necesidades o circunstancias del menor; o cuando exista cualquier otra evidencia de cambio sustancial en las circunstancias que dieron lugar a la pensión vigente.

Según interpretado por el Tribunal Supremo de Puerto Rico, esta disposición limita la discreción del Tribunal de Primera Instancia para modificar una pensión alimentaria vigente, ya se hubiere estipulado la pensión original o se hubiere establecido como resultado de un pleito contencioso, en el sentido de que es indispensable que ocurran cambios sustanciales o significativos que justifiquen la modificación. No basta cualquier cambio en las circunstancias; éste tiene que ser sustancial con relación al estado de fortuna anterior. Tampoco pueden alegarse circunstancias que pudieron haberse alegado al momento de fijar la pensión que luego se pretende modificar. *Negrón Rivera, Ex parte,* 120 D.P.R. 61 (1987). El peso de alegar y demostrar la procedencia de la modificación de una pensión alimentaria corresponde al reclamante en cada caso.

La Ley para el Sustento de Menores, *supra,* consagra la doctrina de los cambios sustanciales en las circunstancias del alimentante o alimentista, como requisito previo a la radicación y tramitación de una solicitud de modificación de una pensión alimentaria vigente, cuando no han transcurrido los tres años dispuestos en la ley, que establece la facultad revisora del Examinador de Pensiones Alimentarias de toda orden de pensión alimentaria cada tres años. Art. 19 de la Ley de Sustento de Menores, *supra,* sec. 518.

De otra parte, el inciso (b)(5) del Artículo 19, *supra,* sobre efectividad de las reducciones en las pensiones alimentarias, establece lo siguiente:

*"Los pagos por concepto de pensiones alimentarias y de aumentos en las mismas serán efectivos desde la fecha en que se radicó la petición de alimentos en el tribunal, y en los casos administrativos desde que se diligenció al alimentante la notificación sobre solicitud de proveer alimentos. Bajo ninguna circunstancia, el tribunal o el Administrador reducirá la pensión alimentaria sin que el alimentante haya presentado una petición a tales efectos, previa notificación al alimentista o acreedor. **La reducción de la pensión alimentaria será efectiva desde la fecha en que el tribunal o el Administrador decida sobre la petición de reducción** o el Administrador modifique la pensión establecida conforme al reglamento de revisión periódica que se adopte. Todo pago o plazo vencido bajo una orden de pensión alimentaria emitida a través del procedimiento administrativo expedito o a través del procedimiento judicial establecido en este capítulo, constituye desde la fecha de su vencimiento, una sentencia para todos los efectos de ley, y por consiguiente, tendrá toda la fuerza, efectos y atributos de una sentencia judicial, incluyendo la capacidad de ser puesta en vigor, acreedora a que se le otorgue entera fe y crédito en Puerto Rico y en cualquier estado. **Además, no estará sujeta a reducción retroactiva en Puerto Rico ni en ningún estado, excepto que en circunstancias extraordinarias, el tribunal o el Administrador podrá hacer efectiva la reducción a la fecha de la notificación de la petición de reducción al alimentista o acreedor o de la notificación de la intención de modificar, según sea el caso.** No se permitirá la reducción retroactiva del monto de la deuda por concepto de las pensiones alimentarias devengadas y no pagadas. (Énfasis nuestro.)*

*[...]"*.

Al dictar una sentencia o resolución sobre alimentos, el pago de la correspondiente pensión alimentaria será retroactivo a la fecha en que el alimentista presentó su acción ante el tribunal, independientemente del tipo de procedimiento utilizado. *Pueblo v. Zayas Colón,* 139 D.P.R. 119, 125-126 (1995). La excepción a esta regla de retroactividad del pago de la pensión alimentaria se activa cuando el tribunal establece una reducción en la cuantía de la pensión. *Valencia, Ex parte,* 116 D.P.R. 909, 914 (1986). Según expone la licenciada Sarah Torres Peralta en su libro, la fecha de retroactividad del decreto alimentario judicial es la fecha en que se presenta la reclamación. Torres Peralta, Sarah, *Ley de Sustento de Menores y el Derecho Alimentario en Puerto Rico,* Publicaciones STP (2006), Tomo 1, sec. 7.04. Por el contrario, en caso de una reducción de la pensión alimentaria, como norma general, ésta tendrá aplicación prospectiva a la fecha de su emisión y notificación. *Idem,* sec. 7.06.

La Ley Para el Sustento de Menores, *supra,* establece una regla para que en los casos de reducción de pensión alimentaria, la orden que se dicta a esos fines no surta efectos retroactivos. No obstante, esta restricción no es absoluta. La ley dispone que si existen *"circunstancias extraordinarias"*, el tribunal, en el ejercicio de su discreción, podrá obviar dicha limitación. Artículo 19 (b)(5), 8 L.P.R.A. sec. 518.

En este caso, celebradas las vistas sobre modificación de pensión alimentaria —y luego de efectuado el cómputo de la pensión alimentaria al amparo de las guías para determinar y modificar pensiones alimentarias que estuvieron vigentes durante el trámite del caso—, la Examinadora recomendó que se redujera la pensión alimentaria a $609.77 mensuales, efectiva al 1ro de mayo de 2007. Así también, recomendó que la referida reducción fuera retroactiva a la fecha en que el demandado-apelado la solicitó, a saber, el 14 de marzo de 2004.

Al momento en que se celebró la vista y quedó sometido el caso, se encontraba vigente el Reglamento Núm. 4070, Guías Para Determinar y Modificar Pensiones Alimentarias en Puerto Rico. El 25 de mayo de 2005, durante el trámite del caso, entró en vigor el Reglamento Núm. 7135, Nuevas Guías Para Determinar y Modificar Pensiones Alimentarias en Puerto Rico.

En aras de beneficiar al menor, la Examinadora recomendó la cuantía de la pensión alimentaria más alta resultante de los cómputos efectuados al amparo de cada uno de los Reglamentos, *supra*. Bajo el reglamento anterior, Núm. 4070, la pensión alimentaria total resultó ser de $454.01, mientras que bajo el nuevo reglamento, Núm. 7135, resultó ser de $609.77.

Como fundamento de su recomendación de retrotraer la rebaja de la pensión alimentaria, la Examinadora estableció lo siguiente:

*"A pesar que la ley dispone que las rebajas de pensiones alimentarias son prospectivas, salvo excepción fundamentada, entendemos que en este caso procede la retroactividad de la rebaja porque de acuerdo a los hechos en este caso, la prueba estableció que la situación económica del promovente varió a partir de 2003, que solicitó el ajuste de la pensión alimentaria desde febrero de 2003, el promovente fue diligente al plantear la solicitud de modificación al tribunal, el cambio en las circunstancias económicas del promovente no respondieron a un subterfugio para eludir su obligación alimentaria, los ingresos del promovente y su capacidad económica se redujo del 1999 cuando estipuló la pensión alimentaria al presente, y ya obra en autos una determinación del tribunal reconociendo la petición de revisión a marzo de 2004."*

Página 37 del Informe y Recomendación de la Examinadora.

Específicamente, indicó que encontró válidas las razones por las cuales el demandado-apelado vendió su negocio y descartó los planteamientos de la demandante-apelante a los efectos de que el demandado pudo haber continuado operando su negocio. Sobre el particular, señaló que:

*"[n]o existe una ley que obligue a una persona a mantenerse operando un negocio cuando el mismo ha perdido la razón económica de su existencia. Si las partes se dividieron, como lo hicieron, los bienes gananciales luego de su divorcio, quedando el taller de hojalatería bajo el dominio absoluto del promovente y entendiendo éste que no podía manejarlo, nada impedía que vendiera el negocio así como nada impidió que la promovida refinanciara la casa."*

En el presente caso, no se estableció que el promovente abandonó su empleo, o su fuente de ingresos como una medida para no cumplir con su obligación alimentaria. La promovida tampoco estableció los ingresos actuales del promovente.

*Ibid.,* página 31. **[2]**

La prueba desfilada en las vistas, llevó a la Examinadora a concluir que el demandado-apelado no tenía la capacidad económica para satisfacer la pensión alimentaria que fue estipulada por las partes en el 1999 en la suma de $1,300. En este caso, se demostró mediante preponderancia de la prueba que la situación económica del apelado cambió sustancialmente cuando se vio obligado a vender el taller de hojalatería porque representaba una pérdida desde que los inquilinos dejaron de satisfacer el canon de arrendamiento. Ante esa encrucijada económica, y como el alimentante ya no tenía la energía para continuar realizando el oficio que durante tantos años ejerció, éste decidió vender el taller de hojalatería. De los autos surge que a la fecha en que el demandado-apelado vendió el taller de hojalatería, éste contaba con 61 años de edad y estaba próximo a recibir los beneficios del seguro social federal.

Los incumplimientos y atrasos en la pensión alimentaria fueron como consecuencia de circunstancias ajenas a su voluntad, lo cual demuestra que la situación económica precaria no fue autoinfligida, como aduce la parte demandante-apelante.

La situación de hechos antes expuesta, nos lleva a coincidir con el foro *a quo,* en que el demandado-apelado no tuvo intención deliberada alguna de eludir su responsabilidad alimentaria para con su hijo menor de edad y menos aún autoinfligirse una insolvencia económica. Prueba de ello es el hecho de que con el dinero producto de la venta del taller, éste pagó varias deudas —incluyendo algunas de la extinta sociedad de bienes gananciales—, y adquirió dos residencias módicas, de las cuales una de ellas la utiliza como su vivienda principal y la otra procedió a arrendarla, a manera de generar unos ingresos para poder cumplir con su obligación de pagar la pensión alimentaria. Debido a la retroactividad de la rebaja de la pensión, la deuda alegada no existe. Por lo tanto, esos pagos a terceros y la compra de una propiedad para recibir ingresos por alquiler no se hicieron en menoscabo o menosprecio de la obligación de alimentar. Por el contrario, le dieron al alimentante apelado la capacidad económica para satisfacer la pensión alimentaria que el tribunal le impuso. Incluso benefició a la apelante Rodríguez Pomales, al librarle del pago de su porción de varias deudas gananciales.

Además, los tribunales no pueden obligar a una parte a continuar en el mismo empleo cuando el mismo ya no le satisface o a mantenerse operando un negocio cuando éste ya no le genera ganancia alguna, a los fines de poder satisfacer una pensión alimentaria determinada. Si bien es cierto que la normativa vigente promueve el que los menores mantengan el mismo estilo de vida al cual estaban acostumbrados, no podemos obviar el hecho de que, aun en aquellos casos en que los padres están casados y viviendo juntos, pueden ocurrir circunstancias extremas que impidan que se pueda mantener el mismo estilo de vida.

En este caso, no nos cabe duda que se demostró a cabalidad la existencia de circunstancias extraordinarias que permiten retrotraer la reducción de la pensión alimentaria a la fecha en que ésta fue solicitada. Por lo tanto, procedía que el TPI hiciera retroactiva la misma a marzo de 2004, fecha determinada por el tribunal mediante resolución de 6 de noviembre de 2006.

Por otro lado, no hallamos base para concluir que la actuación del foro *a quo* —de determinar que el demandado-apelado no adeuda balance alguno al 30 de abril de 2007—, es contraria a derecho. Del expediente surge que la Examinadora le recomendó al tribunal dos posibles cursos de acción a seguir: (1) celebrar una vista administrativa para determinar el monto real de la deuda, o (2) disponer que cualquier balance adeudado fuera absorbido por el ajuste retroactivo en la pensión. El Tribunal de Primera Instancia, en el ejercicio de su discreción, decidió adoptar la segunda recomendación. Por el contrario a lo que alega la parte apelante, resolvemos que dicha determinación es cónsona con la política pública establecida por ley. La vista recomendada se hizo innecesaria porque, aun partiendo de la deuda que reclamó la parte demandante-apelante, y acoge la opinión disidente, el ajuste luego de la rebaja retroactiva de la pensión fue por una cantidad mayor que la adeudada.

En resumen, no hemos de intervenir con la fijación retroactiva de la pensión alimentaria, por cuanto es de aplicación al caso la excepción de circunstancias extraordinarias contemplada en la Ley Para el Sustento de Menores, *supra,* que permite retrotraer una rebaja de pensión alimentaria a la fecha en que ésta fue solicitada. Por lo tanto, concluimos que los dos errores alegados por la parte demandante-apelante no se cometieron.

## V

Por los fundamentos antes expuestos, confirmamos el dictamen apelado.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal. La Juez Cotto Vives disiente con Opinión Escrita.

## ESCOLIOS 2008 DTA 103

**1.** Esta propiedad le fue adjudicada al demandado-apelado mediante sentencia emitida en el caso de división de bienes gananciales presentado por la Sra. Rodríguez Pomales, civil número BAC2001-0089.

**2.** Estos fundamentos no aparecen en el apéndice del recurso porque la parte apelante no incluyó todas las páginas del informe de la Examinadora. Tomamos conocimiento judicial de esas páginas que obran en el expediente del Tribunal de Primera Instancia. De todos modos, debemos recalcar el·deber de los abogados de las partes de cumplir con nuestro Reglamento y someter de forma íntegra los documentos que exige la Regla 16(E) del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B, R. 16(E). Presumimos que la omisión en este caso no fue intencional y, por eso, no impondremos sanciones.

## OPINIÓN DISIDENTE DE LA JUEZA COTTO VIVES - 2008 DTA 103

San Juan, Puerto Rico, a 18 de agosto de 2008

El asunto medular que nos lleva a disentir de la sentencia que hoy emite este Tribunal en el caso de autos está relacionado con el segundo error imputado por la apelante en su recurso. Este se refiere que el Tribunal de Primera Instancia no actuó conforme a derecho al determinar eliminar la deuda de pensión alimentaria ascendente a $15,330, con lo cual hizo retroactiva la rebaja de pensión alimentaria sin expresar fundamentos que justifiquen su dictamen. Peor aún cuando la propia Resolución emitida el 25 de mayo de 2007 resulta inconsistente al determinar en su primer párrafo que **la efectividad de la rebaja de pensión era al 1ro. de mayo de 2007**. Sin embargo, en el segundo párrafo de dicha resolución se ordenó a la Administración para el Sustento de Menores que estableciera en su récord que no existía balance adeudado al 30 de abril de 2007, **cuando lo cierto es que existía un balance de $15,330**, lo que equivale a **impartirle retroactividad** a la rebaja de pensión concedida sin consignar los fundamentos en que sostiene tal dictamen.

Veamos los hechos. Sucintamente, y como ha sido relacionado en la sentencia de este Tribunal, la señora Mildred Rodríguez Pomales nos solicitó que revocáramos una resolución de alimentos en la cual el tribunal *a quo* acogió una de las recomendaciones efectuadas por la Exminadora de Pensiones Alimentarias a los efectos de rebajar la pensión que el señor Luis Antonio Santiago Soto le pagaba para cubrir los gastos de manutención del menor Luis Emilio Santiago Rodríguez, hijo de ambos. En el dictamen apelado también se determinó — como ya dijimos— establecer *que al 30 de abril de 2007 no existía balance adeudado por concepto de pensiones alimentarias atrasadas*.

Previo a entrar al análisis de las consideraciones de este disenso, debo hacer constar, que estoy conteste con la mayoría de este Tribunal en cuanto a que la rebaja de pensión alimentaria procedía en este caso debido a que, ciertamente, los ingresos del alimentante han disminuido. Consideramos, además, que el señor Santiago Soto presentó ante este Tribunal una moción en la cual informó que recientemente había sido intervenido quirúrgicamente el 2 de febrero de 2008. Junto con su escrito, el apelado presentó una certificación médica acreditando que estaba recibiendo tratamiento de quimio y radioterapia, los cuales le incapacitaban para trabajar en este momento.

En fin, convenimos con la mayoría de este panel en cuanto a que el Tribunal de Primera Instancia actuó correctamente al acoger la recomendación de la Examinadora de Pensiones Alimentarias para que se rebajara la pensión que el apelado le provee a su hijo menor Luis Emilio. No obstante, **la falta de evidencia en el**

expediente con relación a la ocurrencia de circunstancias extraordinarias —acaecidas durante los años en que el apelado no cumplió fielmente con su obligación alimentaria—, nos impiden avalar la determinación del tribunal apelado en cuanto a condonar la deuda de $15,330 acumulada por el señor Santiago Soto. Esta actuación le dio efecto de retroactividad a la rebaja de pensión solicitada por el apelado sin que hubiese evidencia en el expediente para sostener dicha determinación.

Precisa, además, relacionar que el apelado dejó de trabajar a los 56 años aduciendo que estaba cansado de trabajar, aunque estaba considerado como uno de los mejores hojalateros del país. [1] Algunas de las determinaciones de hechos del informe rendido por la Oficial Examinadora de Pensiones Alimentarias, llaman poderosamente nuestra atención porque, entre otras cosas, son demostrativas de las prioridades del apelado y resultan bastante ilustrativas, en cuanto al asunto en controversia, a saber:

· "1.14 El 9 de agosto de 2004, mediante la Escritura de Compraventa #11, Exhibit III de la parte promovente, vendió el taller de hojalatería al Sr. Fernando Santiago Cartagena y a Evelyn David Rodríguez, en $175,000.00. De esa cantidad pagó $23,500.00 a la Lcda. Hilda E. Colón Rivera, compró dos (2) casas por $71,000.00 y **depositó $40,000.00 en la Cooperativa Cristóbal Rodríguez Hidalgo**. Los restantes dineros los utilizó para pagar deudas entre las que se encuentran las siguientes:

Cooperativa de Ahorro y Crédito Santa Isabel: $11,000

J. Finance en Aibonito: $2,234.00

Carlos Bonilla: $800.00

Cooperativa de Ahorro y Crédito Cristóbal Rodríguez Hidalgo: $10,403.71

Luis Norat: $1,100.0

Félix Escalera: $1,000.00

Héctor M. Ortiz: $1,000.00

Carlos Torres: $2,000.00

Alberto L. Santiago: $1,500.00

Sedeco: $589.85

Lcda. Hilda E. Colón Rivera, honorarios caso Alimentos: $1,500.00

Lcda. Gloria Borges Valero: $1,052.00

Island Finance: $1,900.00

Esteban Auto: $7,495.00

Cash: $50.00

Direct TV: $54.06

*Auto Store: $90.00*

*Auto Store: $200.00*

*Auto Store: $487.00*

*El Vocero: $240.00*

*Celular del menor: $120.00*

*Efectivo: $147.00*

*Efectivo: $100.00*

*Desconoce a quién lo giró: $270.95"*. (Énfasis nuestro)

Véanse págs. 336-337 del apéndice del recurso.

Como hemos podido apreciar de la relación de pagos que antecede, para el apelado todas sus deudas tenían más importancia que pagar la pensión alimentaria, la cual tenía considerablemente atrasada. Pero, como si ello no fuera suficiente, también para éste era más importante **depositar $40,000.00 en la Cooperativa** que pagar la pensión adeudada. Igualmente, para éste era más importante **adquirir no una (1), sino dos (2) propiedades, [2]** que pagar la pensión adeudada. Lo que es el colmo, **el apelante sí tenía dinero para prestarle $7,495 a un amigo para comprarse una motora** —según expondremos más adelante en este escrito—, pero no tenía dinero para efectuar abono de clase alguna al balance adeudado por concepto de pensión alimentaria. Definitivamente, esa es la actuación que no podemos avalar.

Continuemos examinando otras de las determinaciones de hechos efectuadas por la Oficial Examinadora de Pensiones Alimentarias:

*"1.18 Capacitado para trabajar. Se descarta su testimonio en el sentido de que no trabaja desde marzo de 2006 y que está impedido de hacerlo. El testigo se mostró esquivo y poco claro al testificar sobre su capacidad de trabajo. No estableció, a nuestra satisfacción, la razón por la cual de un ingreso de $1,000.00 mensual, informado en la planilla de información personal y económica del 22 de febrero de 2005, al 2006 sólo tiene un ingreso de $250.00 mensual haciendo "chiripas", lavando, brillando carros y en hojalatería. No presentó evidencia que demuestre que la operación quirúrgica que sufrió a consecuencia de una hernia que lo aquejaba le impida trabajar."* Énfasis suplido.

*"1.19 Cubre deudas aproximadas al mes de $653.18."*

Véase pág. 338 del apéndice del recurso.

Como sabemos, la regla general consiste en que un dictamen de rebaja de pensión alimentaria sólo tiene efecto prospectivo y entra en vigor desde el momento en que el tribunal lo emite. *Rivera Maldonado* v. *Cabrera Olivera*, 130 D.P.R. 39 (1992); *Valencia, ex parte*, 116 D.P.R. 909 (1986). La norma de no retroactividad de una determinación de rebaja de pensión alimentaria obedece, en parte, a que los tribunales deben ser fuertes y rigurosos en lograr que los alimentantes cumplan con su deber en aquellos casos en que se demuestre que la falta de pago de las pensiones alimentarias es producto del capricho y la arbitrariedad. *Martínez* v. *Rodríguez*, 160 D.P.R. 145 (2003).

Aunque, si bien es cierto que el Tribunal Supremo resolvió, en *Valencia, ex parte*, 116 D.P.R. 909 (1986), que pueden existir circunstancias extraordinarias que justifiquen que un Tribunal ordene la retroactividad de un dictamen de reducción de una pensión —inclusive hasta la fecha de radicación de la moción de rebaja de pensión alimentaria—, ello no puede desembocar en incertidumbre y falta de estabilidad en la vigencia de los decretos de alimentos. *Rivera Maldonado v. Cabrera Olivera, supra*. Además, es preciso recordar que es el alimentante, en los casos en que se solicita rebaja de pensión, quien tiene el peso de la prueba. *Argüello v. Argüello*, 155 D.P.R. 62 (2001).

Nótese que la habilidad o inhabilidad de un demandado para pagar una pensión alimenticia *es una cuestión puramente de hecho*. Por ello, el Tribunal de Primera Instancia tiene la autoridad y discreción para disponer que la mencionada rebaja sea retroactiva, a la fecha que formalmente se solicitó, **si la prueba lo justifica**. *Valencia, ex parte, supra*. El foro de instancia, en el uso de su discreción en aquellas *"situaciones extraordinarias"* que el alimentante así lo demuestre, **ya sea por una enfermedad o un accidente incapacitante**, podrá hacer retroactiva la rebaja de pensión alimentaria a la fecha de su presentación ante el tribunal. *Rivera Maldonado v. Cabrera Olivera, supra*. Énfasis nuestro. Ninguna de las circunstancias mencionadas tuvo lugar en el caso que hoy atendemos.

Adviértase que del testimonio del señor Santiago Soto surge que éste vendió su taller de hojalatería en el año 2004 por la cantidad de $175,000. **Sin embargo, depositó $230,880 en su cuenta bancaria** con la Cooperativa de Ahorro y Crédito Cristóbal Rodríguez Hidalgo. Éste alegó que ello obedeció a que junto con los $175,000 producto de la venta del taller también ingresó en la referida cuenta $65,880 que obtuvo por la venta de una casa en Boquerón, un yate de lujo y un vehículo Mercedes Benz. Véanse, págs. 4-9 del Folio 4 de la T.P. O. de la vista del 5 de diciembre de 2005. A pesar de que estas transacciones de compraventa se realizaron antes de que el apelado se divorciara de la señora Rodríguez Pomales, **el apelado declaró que tuvo guardado ese dinero en efectivo, dentro de su vehículo, durante casi cinco años en una maleta que llevaba a todos lados.** Véanse, págs. 83 y 84 de la T.P.O. de la vista del 14 de febrero de 2005.

De otra parte, según la transcripción de la prueba oral, el señor Santiago Soto **le regaló a uno de sus hijos mayores de edad $1,000 para la compra de un vehículo. También le regaló $1,000 a otro de sus hijos por la venta de una casa, y además le prestó $7,495 a un amigo para que éste adquiriera una motora** porque la habían puesto *"en especial"* y tenía que comprarla *"en el momento"*. Véanse, págs. 49-52 de la T.P.O. de la vista del 14 de febrero de 2005.

**Los hechos señalados anteriormente indican que nada le impedía al apelado utilizar parte del producto de la venta de su taller de hojalatería para saldar la deuda de pensión alimentaria que tenía con su menor hijo.** A pesar de que el señor Santiago Soto insiste en que utilizó el dinero depositado en su cuenta de banco para saldar deudas, **¿no era acaso la obligación de proveerle sustento a su hijo la deuda más apremiante de todas?** Ciertamente, el apelado no demostró, ni la evidencia así lo indica, que en el presente caso existiese una *"situación extraordinaria"* que ameritara que se condonara la deuda de $15,330 en pensiones alimentarias atrasadas que el señor Santiago Soto acumuló hasta el año 2007. Considero que en el presente caso, **en el cual está envuelto un interés público apremiante: el sustento de un menor de edad,** la deuda que primero tenía que saldar el apelado era precisamente la de pensión alimentaria. Sin duda, esa constituía la actuación más razonable y sobre todo responsable.

\ De otro lado, el señor Santiago Soto también señaló que con el aludido dinero **había adquirido dos casas, una para vivirla y otra para alquilarla.** Véanse, págs. 81-88 del Folio 2 de la T.P.O. de la vista del 1 de junio de 2005. Reiteramos, del expediente no surge justificación alguna para que el apelado adquiriera *dos residencias* con el dinero producto de la venta de su taller de hojalatería, en lugar de comprar sólo una y satisfacer la deuda de pensión alimentaria acumulada. Por el contrario, la prueba testifical que desfiló ante el foro apelado —aspectos de la cual discutimos anteriormente—, demostró que luego de vender su taller, *la*

*situación económica del señor Santiago Soto le permitía utilizar el dinero con el cual compró la propiedad que ahora alquila, para poner al día la referida deuda.*

Tanto la prueba que surge del récord ante nos, como las determinaciones efectuadas por la Examinadora de Pensiones Alimentarias nos llevan a concluir que el apelado, de forma manifiesta, ha demostrado un total menosprecio no sólo por la obligación alimentaria que le había sido impuesta por el tribunal, si nó, lo que es peor, por las necesidades de su propio hijo.

Por todo cuanto he consignado en este escrito, disiento.

**NYDIA M. COTTO VIVES**
**Jueza de Apelaciones**

**ESCOLIOS OPINIÓN DISIDENTE DE LA JUEZA COTTO VIVES - 2008 DTA 103**

**1.** Véase informe de la examinadora de pensiones alimentarias, págs. 9-10.

**2.** Una de ellas para especular, mediante el alquiler.